[L. A. No. 2.    Department Two.—May 23, 1896.]

## JOHN W. CRAIG, APPELLANT, v. HESPERIA LAND AND WATER COMPANY, RESPONDENT.

CORPORATIONS—TRANSFER OF CERTIFICATES OF STOCK—DELINQUENT ASSESSMENTS—LIEN UPON SHARES—IDENTITY OF STOCK—TRANSFERS SUBJECT TO LIEN.—A corporation has a lien upon the shares of stock for the payment of delinquent assessments thereon; but it has no lien upon the certificates of stock, which are merely evidence of ownership of the shares, and has no right to prevent a transfer of such certificates, on account of a delinquent assessment upon the shares; but the shares remain subject to the lien, and the new owner takes subject thereto; nor is the identity of the stock affected by the transfer; and the corporation can enforce its delinquent assessment upon the shares liable therefor, no

matter how many transfers have been made subsequent to the assess-
ment.

ID.—CERTIFICATE OF STOCK NOT NEGOTIABLE — TRANSFER SUBJECT TO
EQUITIES — BONA FIDE PURCHASER NOT PROTECTED.—A certificate of
stock is not a negotiable instrument; and, in analogy to other non-nego-
tiable instruments, a purchaser would take subject to all equities in
favor of the corporation; nor does the fact that the purchaser did not
know of a delinquent assessment at the time of demanding the transfer
affect the validity of the assessment, nor the liability of the stock there-
for.

ID.—CONVERSION OF STOCK—REFUSAL OF TRANSFER — LIABILITY OF COR-
PORATION — EVIDENCE OF VALUE—DELINQUENT ASSESSMENTS.—A cor-
poration is liable for a conversion of stock which it refuses to transfer on
the books of the corporation to a purchaser thereof; and the existence of
unpaid delinquent assessments upon the stock is no defense to an action
for such conversion, though proof of them is admissible as affecting the
value of the stock.

APPEAL from a judgment of the Superior Court of
Los Angeles County and from an order denying a new
trial. LUCIEN B. SHAW, Judge.

The facts are stated in the opinion.

*H. A. Barclay,* for Appellant.

A corporation has no lien upon shares unless created
by statute, by-law, or charter. (Field on Corporations,
sec. 136; *Williams* v. *Lowe,* 4 Neb. 398; *Massachusetts
Iron Co.* v. *Hooper,* 7 Cush. 183; *Steamship Dock Co.* v.
*Heron,* 52 Pa. St. 280; *Sargent* v. *Franklin Ins. Co.,* 8
Pick. 90; 19 Am. Dec. 306; Cook on Stocks and Stock-
holders, sec. 394; 1 Redfield on Railways, sec. 33; *Far-
mers' etc. Bank* v. *Watson,* 48 Iowa, 336; 30 Am. Rep.
398; *Gemmell* v. *Davis,* 75 Md. 456; 32 Am. St. Rep.
412.) Where the statute creates a lien, transfer of the
stock must be permitted; and then the purchaser takes
subject to the lien. (*Herdegen* v. *Cotzhausen,* 70 Wis. 589;
*Cape's case,* 2 De Gex, M. & G. 562.) The corporation
is liable for a conversion for refusal to transfer the
stock. (*Baltimore etc. Ry.* v. *Sewell,* 35 Md. 238; 6 Am.
Rep. 402; *Commercial Bank* v. *Kortwright,* 22 Wend. 348;
34 Am. Dec. 317; *Tobey* v. *Hakes,* 54 Conn. 274; 1 Am.
St. Rep. 114; Boone on Corporations, sec. 122; Morawetz
on Corporations, sec. 576; *Budd* v. *Multnomah etc. R. R.*

*Co.,* 12 Or. 271; 53 Am. Rep. 355; *Bond* v. *Mount Hope Iron Co.,* 99 Mass. 505; 97 Am. Dec. 49; *Bank of America* v. *McNeil,* 10 Bush, 54, 61; *Protection Life Ins. Co.* v. *Osgood,* 93 Ill. 69; *Rio Grande Cattle Co.* v. *Burns,* 82 Tex. 50; *Helm* v. *Swiggett,* 12 Ind. 194; *Hussey* v. *Manufacturers' etc. Bank,* 10 Pick. 423, and cases cited.)

*Graves, O'Melveny & Shankland,* for Respondent.

The lien of the corporation for delinquent assessments would be defeated by transfer of the shares. (Civ. Code, secs. 337, 338; 23 Am. & Eng. Ency. of Law, 597, note 5; *Mandelbaum* v. *North American Min. Co.,* 4 Mich. 465; *Winter* v. *Montgomery,* 83 Ala. 589.)

HAYNES, C.—Action for the conversion of stock in a corporation.

Defendant is a corporation organized under the laws of this state. On November 18, 1893, plaintiff was the owner of fifty shares of stock in the defendant corporation, represented by certificates numbered 72 and 79, each for twenty-five shares. These certificates were in defendant's possession. On the day above mentioned, plaintiff, having agreed to sell forty of said shares to one Kaelin, offered to indorse and deliver said certificates to the corporation, and demanded that forty shares thereof be transferred to said Kaelin, and new certificates issued, one to Kaelin for forty shares, and one to himself for the remainder. This demand was refused for reasons about which there was some controversy, though it is reasonably clear that the only reason given for not complying with the demand was that the stock was "in litigation."

On November 20th, two days after the demand, this action was brought.

The defense to the action is based upon the claim that the stock in question is liable for certain unpaid assessments. The court refused all the instructions requested by the plaintiff, and instructed the jury to return a verdict for the defendant. This appeal is from the judg-

ment and an order denying plaintiff's motion for a new trial.

A chronological statement of the assessments made, and of the holdings of the shares in question, will simplify the facts and the questions made.

In 1890 an informal or voluntary call was made of seven dollars per share, and all the stockholders paid except Samuel Merrill, who then owned fifty shares represented by certificate No. 26.

On December 9, 1892, assessment No. 4 was made of ten dollars per share. This assessment was made to cover and include the voluntary assessment of seven dollars per share, Samuel Merrill not having paid his proportion, amounting to three hundred and fifty dollars, the intention being to credit all the others with the voluntary payment, and requiring them to pay three dollars per share in addition, and the Merrill stock to pay ten dollars per share.

Prior to that assessment, on November 23, 1892, Samuel Merrill sold and transferred twenty-five shares of his stock to the plaintiff, John W. Craig, and twenty-five shares to J. H. Merrill, and certificate No. 71 was issued to Craig and certificate No. 72 was issued to J. H. Merrill. After that assessment became delinquent Craig and Merrill brought an action to cancel said assessment No. 4, and obtained a restraining order to prevent the sale. Afterward a nonsuit was granted in that action, and plaintiff's motion for a new trial thereof was denied on November 17, 1893.

On September 20, 1893, at a delinquent sale under assessment No. 5, Merrill not having paid the assessment, Craig bought his stock, and a new certificate, No. 79, was issued to plaintiff.

On October 19, 1893, assessment No. 6 of one dollar per share was ordered, to become delinquent November 17th, and the day of sale was fixed for December 6, 1893. This assessment was not paid by the plaintiff, and became delinquent the day before plaintiff's demand for the transfer of his stock was made, though it appears

that plaintiff had no knowledge of that assessment until after this suit was commenced, when he received notice of the delinquency.   He was not informed of it by the company when his demand was made, and the refusal to transfer the stock was then based upon the statement that the stock was "in litigation," referring to the suit of Craig and Merrill against the corporation to enjoin assessment No. 4.

Assessment No. 4 upon certificates 71 and 72 remained unpaid at the commencement of this action, but under a subsequent assessment, which was paid by 71, No. 72 was sold, and plaintiff became the purchaser, and a new certificate, No. 79, was issued to him; and it is conceded by the respondent that, as to the shares represented by that certificate, they were discharged as to assessment No. 4, so that that assessment now affects only twenty-five shares, while the last assessment, No. 6, affects the whole fifty shares.

The record is silent as to any provision in the by-laws of the corporation affecting the question, nor is there any express provision of the statute permitting or prohibiting the transfer of certificates of stock upon the books of the corporation during delinquency; and the question to be determined is, whether the corporation, by a transfer of plaintiff's shares after an assessment thereon became delinquent, affected its right to enforce its assessment against the shares so transferred.

Respondent contends "that, after an assessment and before delinquent sale, the assessment not having been paid, a transfer of delinquent shares to a stranger would entirely defeat the power or the authority of the corporation to collect its dues in the manner provided for in the Civil Code."

In support of this contention counsel argue that "the corporation had a lien (or the equivalent of a lien, so far as holding appellant to his status as a book owner of the shares), which appellant could not defeat by diverting the shares into a new channel of ownership beyond the reach of the corporation."

The lien, however, is upon the *shares*, and not upon the certificate. The certificate is merely evidence of ownership of the shares. When an old certificate is surrendered, and a new certificate is issued, the new certificate represents the same shares, but the shares themselves remain subject to any lien the corporation may have upon them, and the new owner takes subject to such lien. The identity of the stock is not affected by the transfer. (*Hawley* v. *Brumagim*, 33 Cal. 394; *Atkins* v. *Gamble*, 42 Cal. 99, 100; 10 Am. Rep. 282.) The keeping of a stock-book, in which the original issue and all subsequent transfers must be entered, enables the holder or purchaser to trace his shares back to the original issue by the numbers of the different certificates, and thus identify the shares upon which any assessment has been made, and enables him to ascertain with certainty, in connection with the other records of the corporation relating to assessments and delinquent sales, whether his shares are free from liens or liability in favor of the corporation, and, in the same manner, enables the corporation to enforce its delinquent assessment upon the shares liable therefor, no matter how many transfers have been made subsequent to the assessment, each transferee taking the legal title, but subject to the assessment, just as the grantee of the legal title to land takes it subject to all valid recorded liens. If respondent's contention is sound, it must follow that transfers upon the books must cease when the assessment is made, for any or all of the shares assessed may become delinquent; and it would also follow that if an assessment were made which stockholders generally regarded as illegal, and they should contest the same in the courts, they would be obliged, pending the litigation, however protracted it might be, either to hold their stock subject to all the liabilities of a "bookholder" until the end of the litigation, or pay an unjust or illegal assessment. Such ruling would improperly and unjustly interfere with the disposition of property by the owner, and would not add to the security of the corpo-

ration in the collection of delinquent assessments. A certificate of stock is not a negotiable instrument. (*Barstow* v. *Savage Min. Co.*, 64 Cal. 388; 49 Am. Rep. 705; *Graves* v. *Mono Lake etc. Min. Co.*, 81 Cal. 304; *Swim* v. *Wilson*, 90 Cal. 129; 25 Am. St. Rep. 110.) In analogy to other non-negotiable instruments, a purchaser would take subject to all equities in favor of the corporation; but whether a transferee upon the books would take his stock discharged of any lien undisclosed by the corporation at the time of the transfer and the issuance of a new certificate need not now be determined, nor do I think it was determined in the case of *Craig* v. *Hesperia Land etc. Co.*, 107 Cal. 675 (the pleadings in which case are set out in the record in this case), inasmuch as it may have been held in that case that the voluntary payment of seven dollars per share was regarded as an indebtedness of the corporation to the contributors, and that assessment No. 4 was made to meet that and other liabilities.

If, then, the transfer of plaintiff's shares upon the books of the corporation, and the issuance of new certificates, would not have affected the power of the corporation to collect the delinquent assessment on such shares by a sale thereof, such delinquency did not justify the refusal to make the transfer, and plaintiff's objection to evidence of those facts set up in the answer, if offered as a full defense to the action, should have been sustained; though proof of the unpaid delinquent assessment would have been admissible as affecting the value of the stock; and it also follows that the court erred in instructing the jury to find for the defendant.

*Ranch Land etc. Co.* v. *Herberger*, 82 Cal. 603, cited by respondent, sustains the views we have expressed. I can discover no difference between the right of a corporation to collect a valid assessment, and its right to collect a stipulated part of subscription to stock, nor how the nonpossession of the certificate affects that right in either case. In *Mandelbaum* v. *North American Min. Co.*, 4 Mich. 465, cited by respondent, the question arose

between a stockholder who had lost his certificate, to which was attached a blank power of attorney for its transfer signed by the original holder, of whom the loser purchased it, and the vendee of the finder who had purchased it in good faith, and to whom the company issued a certificate after notice of the loss by the true owner. It was there held that the holder of a certificate so indorsed and transferred is entitled to the same rights respecting it as against third parties, which the law confers upon the holder of commercial paper. It is obvious that a broad distinction exists between that case and this. The corporation there might well be estopped to deny the title of one to whom it transferred the stock after notice of the loss; but that does not touch the question of its right to enforce a delinquent assessment notwithstanding the transfer. In this state neither the finder of an indorsed certificate nor his vendee would acquire any right to the stock. (*Sherwood* v. *Meadow Valley Min. Co.*, 50 Cal. 412.)

The fact that plaintiff did not know of the assessment at the time he demanded the transfer, nor at the time suit was commenced, does not affect the validity of the assessment nor the liability of the stock therefor; but it is evident that if respondent's contention is sound the holder of stock may not only be deprived of the benefit of an advantageous sale, which he would desire to make under any circumstances, but he would be denied the right to dispose of his stock to avoid personal liability for debts about to be incurred which he did not approve, and which in his judgment would be ruinous not only to the corporation, but to himself as a stockholder.

The judgment and order appealed from should be reversed.

BRITT, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

HENSHAW, J., TEMPLE, J., McFARLAND, J.

Hearing in Bank denied.