[L. A. No. 2427.  In Bank.—April 18, 1910.]

GREGORY PERKINS, JR., Trustee in Bankruptcy of the Golden Gate Laundry (a Corporation), Bankrupt, Appellant, v. J. E. COWLES et al., Respondents.

INCORPORATION OF LAUNDRY BUSINESS—SHARES TAKEN AT ONE-THIRD SUBSCRIPTION — WHOLE STOCK ISSUED—BONA FIDE TRANSFEREES LIABLE TO TRUSTEE IN BANKRUPTCY.—Where a laundry business was incorporated with a capital of three hundred and thirty shares of one hundred dollars each, and the business was taken in at the ratio of one third the par value of one hundred and sixty-five shares subscribed by its owners, and the residue of the shares were subscribed by the incorporators at one-third rate in cash, and the whole capital stock was issued to them at par, transferable on the books, and sold by them at forty per cent to transferees in good faith upon representation that the whole stock was paid up, including that of the president, who sold part of his shares, such transferees are liable for calls upon the unpaid subscription, as shown by the books, to a trustee of the corporation in bankruptcy for the benefit of its unpaid creditors, after exhaustion of the corporate assets.

ID.—REPRESENTATION BY PRESIDENT IMMATERIAL — CORPORATION AND TRUSTEE NOT ESTOPPED.—The representation made by the president of the corporation to intending purchasers of stock that it was paid up was a false quantity, and could not bind the corporation or affect its creditors, when, as matter of fact, the stock had not been paid, as shown by its books, and it also appears that when the statement was made by him he was not representing the corporation, but himself as a stockholder seeking with other stockholders to dispose of part of their stock to the defendants. The fact that the repre-

CLVII Cal.—40

sentation was made in good faith is immaterial and could not, under the circumstances, estop the corporation, and certainly could not estop the receiver thereof in bankruptcy, from making calls upon the transferees for the benefit of its creditors.

ID.—LIABILITY OF ORIGINAL SUBSCRIBERS AND TRANSFEREES.—The original subscribers were liable to the corporation for the full subscription made by them to its shares over and above the amount credited and paid thereon; and when they transferred their shares to the defendants, and the latter caused the transfer to be entered on the books of the corporation, the former were released from liability as to such shares, and the defendants, in law, as transferees, assumed it, as far as any right of the corporation to compel its payment is concerned. No express promise by them to pay the balance of the subscription price was necessary.

ID.—RIGHTS OF CORPORATION DETERMINED BY TRANSFER.—The corporation after the transfer of the stock to the defendants and the entry thereof on its books could look only to the defendants as its recorded stockholders to compel payment of either calls to pay the original subscription to its stock or for assessments thereon.

ID.—RIGHTS OF TRANSFEREES FOR MISREPRESENTATION LIMITED TO REMEDY AGAINST TRANSFERRERS.—The only right which the defendants had arising from misrepresentation of the fact of payment for the stock in full was a right of action against the parties making it for damages and for rescission of the sale of the stock.

ID.—CERTIFICATES OF STOCK NOT NEGOTIABLE.—Certificates of stock in this state are not negotiable instruments, either in the commercial sense or within the definition of the Civil Code; but are mere evidences of the holder's right to a given share in the franchises and property of the corporation; and the stock represented by them is subject to assessment for subscription calls, no matter to whom it may be transferred.

ID.—RULE OF NON-NEGOTIABLE INSTRUMENTS APPLICABLE — TRANSFER SUBJECT TO EQUITIES.—The rule of non-negotiable instruments applies to certificates of stock, that a purchaser thereof takes them subject to all equities in favor of the corporation.

ID.—LEGAL EFFECTS OF TRANSFER.—The transfer of certificates of stock relieves the transferee from no liability to the corporation which his transferrer was under, so that when one purchases stock and causes the stock to be entered upon the books of the corporation he thereafter holds his shares on the same conditions as did the stockholder from whom he purchased. He acquires under them all his rights and is subject to all his liabilities and obligations respecting them.

ID.—UNPAID SUBSCRIPTIONS ASSETS IN BANKRUPTCY—TRUST FUND FOR CREDITORS.—The unpaid subscriptions to the stock of the corporation is a trust fund for the creditors of the corporation and may be collected for its creditors, and therefore constitute assets to be collected by a trustee of the corporation in bankruptcy for the benefit

of its creditors. The liability therefor arises by virtue of the stock-holders' contract of membership in the corporation evidenced by the certificate of shares, which attaches to transferees thereof, on its books.

ID.—AGREED STATEMENT OF FACTS—ERRONEOUS CONCLUSIONS BY TRIAL COURT—CORRECT JUDGMENT ORDERED UPON REVERSAL.—Where the case was determined upon an agreed statement of facts, which dis-closes every fact essential to a correct judgment, and the trial court by its judgment drew an incorrect conclusion therefrom, the correct judgment will be ordered upon reversal upon such agreed statement.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Lawler, Allen, Van Dyke & Jutten, for Appellant.

Lloyd W. Moultrie, for Respondents.

LORIGAN, J.—This case was submitted to the trial court on an agreed statement of facts. It appears therefrom that the Golden Gate Laundry, Incorporated, was organized under the laws of this state in January, 1902, with a capital stock of thirty-three thousand dollars, represented by 330 shares of the par value of one hundred dollars each. All the stock was subscribed for by the six original incorporators. Certain of these being the owners of a business plant known as the Golden Gate Laundry, transferred it to the Golden Gate Laundry Incorporated, at a valuation of five thousand five hundred dollars. It was accepted by the latter corporation at that figure, and 165 shares of the capital stock of the corporation subscribed for by said parties were credited there-by with a payment of 33⅓ cents on each dollar per share of the capital stock subscribed for by them. Subsequently the subscribers to the remaining 165 shares of the capital stock paid into the treasury of the corporation 33⅓ cents on the dollar per share of the stock subscribed for by them. Thereupon all the stock of the corporation was issued to the original subscribers, the certificates being in the usual and ordinary form, reciting that the person named therein was the owner of a given number of shares of one hundred dollars

each of the capital stock of the corporation, transferable on its books on surrender of the certificate. Some months thereafter these defendants purchased certain shares under the following circumstances:—

Three of the original subscibers — Rogers, McCoy, and Hedderly—being desirous of securing patronage for the business of the corporation and extending its influence, arranged with the defendants and others to purchase part of the shares held by them for forty cents on the dollar per share. Hedderly was one of the original subscribers and president of the corporation. He and the others stated to the defendants, when soliciting a purchase of the stock by them, that the stock was fully paid up at its face or par value, and that there were no unpaid subscriptions thereon. In making this statement, Hedderly acted in good faith, believing that the stock was fully paid up by the transfer of the property to the corporation from the Golden Gate Laundry. The defendants had no notice to the contrary, believed the representations as made, and stated to Hedderly and those from whom they purchased that they would not buy the stock unless it was fully paid up. Under the assurances given, the defendants then purchased a large number of the shares of the stock, which were transferred to them by the original subscribers and such transfers entered upon the books of the corporation. The defendants ever since said transfers have been and now are the owners and holders of the said stock.

In 1904, on an involuntary petition in bankruptcy filed in the United States district court for the southern district of California, the corporation was adjudged a bankrupt and plaintiff was elected and duly qualified as its trustee. The bankrupt corporation, being without sufficient property to pay the debts of the corporation in full, on petition of plaintiff, as such trustee, the said United States district court, in September, 1904, ordered that a call be made of fifty per cent of all unpaid subscriptions or balance due on the capital stock. In January, 1906, a second call for a like amount of the balance of unpaid subscriptions was made, and the defendants having failed to make payment to the trustee of either of said calls, the plaintiff brought this action against them. The corporation itself never made any calls on account of any unpaid subscriptions to its capital stock.

The trial court rendered judgment in favor of defendants, adopting the agreed statement of facts as the findings of the court, and this appeal is taken by plaintiff from the judgment.

It will be readily observed under the agreed statement of facts that the main question presented on this appeal is whether a stockholder, who has purchased the stock of a corporation in good faith and for a valuable consideration from an original subscriber, who has not paid the full subscription price thereof, can be held liable for the unpaid subscription of which non-payment he has no actual notice or knowledge, it in fact being represented to him by the president of the corporation, as well as the other sellers of the stock, at the time of his purchase, that the stock was fully paid for, although from the books of the corporation it appears that the stock had not been fully paid.    The trial court held that under the circumstances the defendants, as transferees of the stock were not liable.  But we cannot agree with that conclusion.

As far as the question is affected by the representations of the president of the corporation that the stock was fully paid, that is a false quantity.   We are not referred to any authority where it has been held that even a corporation itself, let alone its creditors, would be bound by any such statement of the president of the corporation.  As a matter of fact the stock had not been fully paid and when the president stated that it was he was not representing the corporation and did not pretend to.   Himself a stockholder by virtue of his original subscription, he was simply acting with Rogers and McCoy in an endeavor to make a sale of a portion of their stock to the defendants, in order to extend the influence and increase the patronage of the corporation by having the stock of the company distributed among a large number of stockholders.  He was acting in his own behalf in an effort, with the others, to dispose of a portion of his and their stock. While it is true that he made the representations in good faith, and doubtless the others did also, it is equally true that he had no authority from the corporation to do so.  At least it does not appear that he had any.  He was not acting in behalf of the corporation in the sale of any stock belonging to it, but simply in the personal interest of himself and the others. His conduct could not have estopped the corporation in its

right to require, if necessary and while a going concern, the full payment of the subscription price, and certainly could not estop the receiver in bankruptcy, acting in behalf of the creditors, after the corporation had become insolvent, from making a call for such payment of it, if otherwise the transferees of the original subscribers were liable therefor.

Neither is it of any moment that representations that the stock was fully paid (independent of those made by the president) were made by the other original subscribers when selling the stock to defendants. There can be no question but that the original subscribers were liable to the corporation for the full subscription price, and, under the law of this state, when they transferred their stock to the defendants, and the latter caused the transfer to be entered on the books of the corporation, the former were released from liability for such payment, and the defendants, in law, as transferees, assumed it, as far as any action by the corporation to compel its payment is concerned. No express promise on their part to assume or pay the balance of the subscription price was necessary. The corporation could, after the transfer of the stock to defendants and entry thereof on its books, look only to the defendants as its recorded stockholders to compel payment of either calls for the original subscription to its stock or for assessments thereon. · (*Visalia etc. Ry. Co.* v. *Hyde*, 110 Cal. 632, [52 Am. St. Rep. 136, 43 Pac. 10]; *People's Home Sav. Bank* v. *Rickard*, 139 Cal. 285, [73 Pac. 858]; *People's Home Sav. Bank* v. *Stadtmuller*, 150 Cal. 106, [88 Pac. 280]; *O'Dea* v. *Hollywood Cemetery Assoc.*, 154 Cal. 53, [97 Pac. 1].)

In view of this exclusive legal liability to the corporation for the payment of the subscription price which the transferees of stock assume by having themselves entered on the corporate books as stockholders, it would seem to be but a waste of time to give serious consideration to the proposition that a representation by a stockholder, who is an original subscriber of corporate stock, when selling his stock, that it is fully paid, would absolve both of them—the original subscriber by transfer and the transferee by the representation—from all liability to the corporation or its creditors for payment of such subscription price. A mere statement of the proposition negatives its soundness. The only right which

the defendants had arising from the misrepresentation of the fact of payment was a right of action against the parties making it, personally, for damages and for rescission of the sale of the stock.

So that the matter of representation, either by the president of the corporation, or by him and the other stockholders being eliminated as obviously unimportant factors in the present controversy, we are brought to the broad proposition and the one for which in the end respondents really contend, namely, that a purchaser of certificates of stock in the open market in good faith and for value, without anything on the face of the certificates indicating that the stock has not been fully paid, takes them free from any liability for calls for unpaid subscription, either at the instance of the corporation or its creditors, although the shares are in fact not fully paid for.

Whatever may be the rule in sister jurisdictions, and we are referred to cases therefrom so holding, this is not the rule obtaining in this state. In *O'Dea* v. *Hollywood etc.* 154 Cal. 71, [97 Pac. 8], this same proposition was urged, and in answer to it this court said:—

"But independent of this claim of representation, the broad proposition of appellants is that because they purchased their certificates of stock in good faith and without notice in the open market, such stock is to be deemed fully paid up, and they are protected as *bona fide* purchasers, even though upon the face of the certificates there was nothing to indicate that the stock had been fully paid.

"In effect, their claim is, that certificates of stock are negotiable securities and subject to the same rules governing the transfer of such instruments. But this position under the law of this state is untenable. Whatever the rule may be in other jurisdictions (and some authorities therefrom are cited by appellants in support of their claim), it is well established in this state that certificates of stock are not negotiable instruments, either in the commercial sense or within the definition of the Civil Code, and that the stock represented by them is subject to assessment for subscription call, no matter to whom it may be transferred. The rule in this state is that certificates of stock in a corporation are but mere evidences of the holder's right to a given share

in the franchises and the property of the corporation and are not negotiable instruments. (*Barstow* v. *Savage M. Co.*, 64 Cal. 388, [49 Am. Rep. 705, 1 Pac. 349]; *Graves* v. *Mono Lake Min. Co.*, 81 Cal. 304, [22 Pac. 665]; *Craig* v. *Hesperia L. and W. Co.*, 113 Cal. 7, [54 Am. St. Rep. 316, 45 Pac. 10].)

"Such certificates of shares not being negotiable instruments, the rule analogous to other non-negotiable instruments applies, and a purchaser takes them subject to all equities in favor of the corporation. The transfer relieves him from no liability to the corporation which his transferrer was under, so that when one purchases stock and causes the transfer to be entered upon the books of the corporation, he thereafter holds his shares on the same conditions as did the stockholder from whom he purchased; he acquires under them all his rights and is subject to all his liabilities and obligations respecting them. (*Visalia etc. R. Co.* v. *Hyde*, 110 Cal. 632, [52 Am. St. Rep. 136, 43 Pac. 10]; *Craig* v. *Hesperia L. & W. Co.*, 113 Cal. 7, [54 Am. St. Rep. 316, 45 Pac. 10]; *People's Home Savings Bank* v. *Rickard*, 139 Cal. 285, [73 Pac. 858].) Many authorities from other states might be cited to the same effect, but these from our own state declare the rule here."

In that case we had occasion to examine the authorities relied on as establishing the rule for which respondents contend—1 Cook on Corporations, sec. 50; 3 Clark & Marshall, p. 1741; Helliwell on Stock and Stockholders, p. 911. It will be noted, however, when these authorities are looked to and the cases they cite examined, that (with a few exceptions in the latter) the rule promulgated or declared proceeded upon the theory that certificates of stock are negotiable or *quasi* negotiable instruments, or at least should be so treated. In this state, however, as certificates of stock are not negotiable instruments and the purchaser of stock is no more protected than the purchase of any other non-negotiable instrument, the rule of the authorities cited, based on the negotiability or *quasi* negotiability of stock certificates, has no force here.

In fact, in those jurisdictions where the rule of non-negotiability of certificates of stock obtains, the rule as to the liability of transferees of stock is the same as in this state: (*Upton* v. *Tribilcock,* 91 U. S. 45; *Webster* v. *Upton,* 91 U. S. 65; *Merrimac Mining Co.* v. *Levy,* 54 Pa. St. 227, [93 Am. Dec.

697]. See notes to *Thompson* v. *Reno Bank,* 3 Am. St. Rep. 829.)

As far as it is insisted that the issuance of the certificates of stock, without any statement that the stock had not been fully paid for, was equivalent to a representation that it had been so paid, this point is fully discussed and decided adversely to the respondent in *O'Dea* v. *Hollywood Cemetery Assoc.,* heretofore quoted from.   The certificates here involved, like the certificates involved in that case, were issued long before section 323 of the Civil Code was amended so as to require certificates issued prior to the payment of the full amount due to state the amount actually paid.

Some question is raised by respondents as to whether the unpaid subscription of the stock owned by defendants conconstitutes assets in bankruptcy.   We think there can be no doubt about it.   In *Burke* v. *Maze,* 10 Cal. App. 206, [101 Pac. 438, 440], the rule is correctly laid down as to the liability of the original subscribers.   It is there said: "The amount due from the stockholders for the subscribed stock of the corporation is a trust fund for the creditors of the corporation, and such unpaid subscriptions to its stock are a part of its assets and may be collected for its creditors. (*Vermont etc. Co.* v. *Declez etc. Co.,* 135 Cal. 579, [87 Am. St. Rep. 143, 67 Pac. 1057]; *Walters* v. *Merced Academy Assoc.,* 126 Cal. 583, [59 Pac. 136]; *Visalia etc. R. R. Co.* v. *Hyde,* 110 Cal. 632, [52 Am. St. Rep. 136, 43 Pac. 10].) Such liability arises by virtue of the stockholders' contract of membership in the corporation, evidenced by the certificates of shares.   (Morawetz on Private Corporations, 2d ed., sec. 128; *Union Savings Bank* v. *Willard,* 4 Cal. App. 690, [88 Pac. 1098].)"

But the same liability attaches to transferees on becoming stockholders of record on the books of the corporation as bound the transferrers as original subscribers.   By purchasing from the original subscribers the transferees assumed, as a matter of law, all the liabilities that the transferrers of the stock to them were under, and took it subject to all their obligations.   (*Visalia etc. R. R. Co.* v. *Hyde,* 110 Cal. 630, [52 Am. St. Rep. 136, 43 Pac. 10]; *O'Dea* v. *Hollywood Cemetery Assoc.,* 154 Cal. 53, [97 Pac. 1].)   Hence the defendants were liable to a call for payment of the unpaid subscriptions

in the bankruptcy proceedings, and the trustee had the right to maintain this action to recover on the calls.

The judgment appealed from is reversed, with directions to the trial court to enter judgment in favor of plaintiff against each of the defendants for the amount due on the unpaid subscriptions to the capital stock of the corporation held by him when this action was commenced. The agreed statement of facts which has been adopted by the court as its findings in the case furnishes the data upon which the computation may be made and the judgment rendered.

Angellotti, J., Sloss, J., Henshaw, J., and Melvin, J., concurred.

SHAW, J., concurring.—I concur because the previous decisions of this court settle the question that in this state the issuance of a certificate of corporate stock, which upon its face does not show that it is not full paid stock, is not a representation by the corporation that it has received the par value of the stock. If it were a new proposition I would hold the contrary.

Rehearing denied.