[Civ. No. 3178.   Second Appellate District, Division Two.—February 5, 1920.]

## A. C. ZIERATH et al., as Trustees, etc., Respondents, v. S. F. CLAGGETT et al., Appellants.

[1] Corporations—Issuance of Stock for Property—Overvaluation—Liability to Creditors.—Where the promoters of a corporation transfer a certain oil lease to the company in exchange for all of the stock of the corporation, as fully paid up and nonassessable, and the valuation placed upon such lease is so grossly excessive as to be constructively fraudulent as to creditors, the latter

1. Liability to creditors of corporation of person purchasing stock for property or services worth less than the par value of stock, note, Ann. Cas. 1915A, 1269.

Right of corporation itself to complain that property purchased by it was of less value than the stock issued in exchange therefor, in the absence of actual fraud, note, 19 L. R. A. (N. S.) 115.

may recover from the holders of such stock an amount equal to the unpaid subscriptions, notwithstanding the honest belief of the parties as to the value of the property at the time of the exchange.

[2] ID.—LIABILITY OF TRANSFEREES OF STOCK.—By purchasing from the original subscribers the transferees of such stock assume, as a matter of law, all the liabilities that the transferors of the stock to them are under, and take it subject to all their obligations.

[3] ID.—LACK OF KNOWLEDGE THAT STOCK NOT PAID UP—ENFORCEMENT OF STOCKHOLDERS' LIABILITY—ESTOPPEL.—In an action by a creditor of a corporation to enforce the stockholders' liability for unpaid subscriptions, the plaintiff is not estopped to set up his complaint because it extended credit wholly upon its own representations of results that could be obtained from the use of a drilling rig it sold to the corporation and that sales of stock would furnish the funds necessary to pay for the drilling of the well and for the rig, where the evidence shows that it did not know that the defendants had not paid the full amount of the par value of the stock owned by them in the corporation.

[4] ID.—EXTENSION OF CREDIT—PRESUMPTION AS TO CAPITAL STOCK AND RIGHT TO ENFORCE COLLECTION.—When credit is extended to a corporation it is done so under the presumption that the capital stock that is issued has been or will be paid for in full if necessary to pay creditors, and where capital stock has not been paid for in full, the creditors, if they are unable to collect directly from the corporation, are entitled to seek to satisfy their judgment out of the unpaid portion of such subscribed and issued capital stock.

[5] ID.—IDENTIFICATION OF BOOKS BY FIRST SECRETARY—ADMISSIBILITY—PRESUMPTION.—In an action by a creditor of a corporation to enforce the stockholders' liability for unpaid subscriptions, the first secretary of the corporation having identified the books of the corporation used during the time he was such secretary, they were properly admitted in evidence, the presumption being, in the absence of evidence to the contrary, that they continued to be the books of the company.

[6] PLEADING—AMENDMENT OF COMPLAINT—OPENING OF DEFAULT—SERVICE.—Where an amendment of a complaint goes only to the form, and not to the substance, a default is not opened, and service of such amended complaint upon the defaulting defendants is unnecessary.

2. Liability as on unpaid subscription of transferees of stock issued in exchange for property or services at an overvaluation, note, 12 A. L. R. 449.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

John E. Daly and James H. Daly for Appellants.

Olin Wellborn, Jr., and Alfred H. McAdoo for Respondents.

THOMAS, J.—This is an action brought by the trustees of a defunct corporation to ascertain and to have adjudicated the amount due from each of the 248 defendants other than the corporation defendant, as subscribers, owners, and holders of shares of stock of the defendant Midway Southern Oil Company of Long Beach, and to have and recover judgment against each of the defendants herein for the amount found to be due plaintiff, not to exceed, as to any defendant, the amount found due from said defendant, and for general relief.

The second amended complaint is in two counts. Each count is based upon a judgment recovered by plaintiff against said corporation defendant—the Midway Southern Oil Company of Long Beach. There was a specific denial of each and every material allegation of this complaint, upon which the action was tried. Trial was had before the court without a jury, and findings were entered in favor of plaintiff in the sum of $4,727.84, with interest, adjudicating "that in no event are the plaintiffs entitled to a judgment against any defendant in an amount to exceed eighty cents (80c) per share upon the number of shares owned by such defendant," and fixing the limit of liability as to each defendant, beyond which plaintiff could not proceed in any event, in exact dollars and cents. There was a motion for a new trial, which was denied. The appeal is from the judgment so entered, and is taken by but thirty-two of the defendants named herein.

Many points are urged by appellants for the reversal of the judgment herein, and they will be considered in the order presented. The first point urged constitutes an attack on findings VI and VII, as not supported by the evidence. [1] It is urged by appellants that there was "no

46 Cal. App.—2

evidence of intentional fraud . . . ; the land in this case was taken solely for mining purposes. There was no certainty as to what would be obtained from it, any more than if the parties had purchased a prospect for any other mineral substance and formed a company to develop the property by a discovery of the minerals in it''; and hence, that ''it is the value of the property in the condition it is in at the time of the exchange, the value as known to the parties and as they honestly believed it to be, that determines the liability, at least where there is no subsequent increase in value nor any intentional fraud.'' This is only another way of arguing that ''incorporators of mining companies should be permitted to violate the law and deliberately deceive the public, but incorporators of manufacturing enterprises should not; and this notwithstanding the truth that the same specific statute grants no greater power to one than the other, and fixes the same liabilities upon the stockholders in each.'' With such contention we cannot agree. A mere cursory perusal of the record will, we think, disclose the fact that these findings are amply supported by the evidence. In support of their contention appellants urge that the case of *In re South Mountain C. M. Co.,* 5 Fed. 403, is in point. We do not think so. The supreme court of this state has repudiated the doctrine therein enunciated in cases such as the one at bar ever since its decision of the case of *Vermont Marble Co.* v. *Declez etc. Co.,* 135 Cal. 579, [87 Am. St. Rep. 143, 56 L. R. A. 728, 67 Pac. 1057], decided February 25, 1902; and this fact is made clear by the case of *Herron Co.* v. *Shaw,* 165 Cal. 668, [Ann. Cas. 1915A, 1265, 133 Pac. 488], wherein it is said: ''We think the case of *Vermont Marble Co.* v. *Declez Granite Co.,* . . . establishes the opposite rule in this state.'' Then, too, in the case at bar defendants failed to show by the evidence, or at all, that the business of the Midway Southern Oil Company of Long Beach came within the class of cases to which the South Mountain C. M. Co. case is applicable, were that doctrine applicable in this state.

[2] Appellants further urge that ''the defendants are transferees, and not liable.'' For our present purpose we think it needless to differentiate, distinguish, or try to show the fine technical variations or shades of meaning between the words ''stockholder'' and ''subscriber,'' in view of the

fact that both the supreme court of this state and this court have said that "the same liability attaches to transferees as original subscribers. By purchasing from the original subscribers the transferees assumed, as a matter of law, all the liabilities that the transferors of the stock to them were under, and took it subject to all their obligations." (*Perkins* v. *Cowles,* 157 Cal. 625, [137 Am. St. Rep. 158, 30 L. R. A. (N. S.) 283, 108 Pac. 711].)

[3] It is next urged that "plaintiffs did not rely upon the capital stock of the corporation in extending credit," but, on the contrary, that "the plaintiff company extended credit wholly upon its own representations of results that could be obtained from the use of its drilling rig and upon the understanding that the defendant corporation had no funds; that certain of its stockholders should furnish necessary funds to start the work; that a log or report of the work would be furnished, and that sales of stock would furnish the funds necessary to pay for the drilling of the well and payment for the rig." In other words, as we see it, this contention, for all practical purposes, simply amounts to a claim that plaintiffs are estopped to set up their complaint because of the purported facts contained in the statement just quoted. We know of no law, and none has been called to our attention, that supports such contention. Assuming for the present that the statement is true, still that condition itself is impotent to relieve these defendant stockholders from liability in this case. [4] Certain it must be, that no citation of authorities is needed to support the statement that when credit is extended to a corporation it is done so under the presumption that the capital stock that is issued has been or will be paid for in full if necessary to pay creditors, and that where capital stock has not been paid for in full, the creditors, if they are unable to collect directly from the corporation, are entitled to seek to satisfy their judgment out of the unpaid portion of such subscribed and issued capital stock. It is held in *Sherman* v. *Harley,* 178 Cal. 584, [174 Pac. 901], that "where a creditor at the time credit was given extended such credit with full knowledge of the difference between the par value of the stock and the value of the property received for such stock, he would have no claim upon the shareholders for further contribution of capital." It

would seem that defendants had this case in mind, and by proper pleading brought themselves within it. Hence, this question was before the court at the time of the trial. The allegation of the answers presenting this defense was as follows: ''That at the time of extending the credit represented by said alleged judgment, the Zierath Combination Drill Company well knew that none of the defendants named in said second amended complaint had paid the full amount of the par value of the capital stock owned by them in said corporation, and well knew that none of said defendants had paid more than twenty cents per share to apply thereon, and that said Zierath Combination Drill Company in extending said credit did not rely upon the capital stock of said corporation which was then and there issued, and upon the professed capital stock of said corporation having been in fact paid up in full, but extended said credit of said corporation wholly upon the responsibility of the corporation itself.'' The record fails to disclose that the Zierath Combination Drill Company, or any of its officers or agents, had any such knowledge; and the court, after trial on the issues thus presented by the defendants themselves, found against them, which finding is supported by the evidence—being the testimony of the former officers of the company last mentioned. Here, then, we have the concrete evidence of the fact that the trial court proceeded in accordance with the doctrine laid down in the Sherman case, *supra,* as a matter of law; but it finds, as a matter of fact, that said drill company was in no way brought within the exception pointed out in that case. This being true, the plaintiffs were not estopped to seek to satisfy their judgment against the defendant corporation out of the unpaid subscriptions of stockholders.

[5] It is also a contention of these appealing defendants that the books of the defendant corporation were inadmissible in evidence, having been admitted over defendants' objection that it had not been shown by the books ''that they truly show the amount of the capital stock issued by this corporation, or that they correctly show the names of the subscribers or holders of the capital stock which was authorized under the charter of the corporation.'' The answer to this is found in the evidence of the witness Brooks, who testified that he was the first secretary of the defendant

company, and identified the very books against which the
objection was directed as the books of the defendant cor-
poration during the time he was such secretary. Presump-
tively, until shown to be otherwise, these books continued
to be the books of the company. (Code Civ. Proc., subd. 32,
sec. 1963.) This, therefore, was a sufficient showing to
support the correctness of the court's ruling.

The language of the supreme court of this state, in the
case of *Knowles* v. *Sandercock,* 107 Cal. 629, [40 Pac. 1047],
is pertinent and, we think, applicable to the case at bar:
"The evidence, it is said, is not sufficient because there
may be other *subscribers* for stock besides those whose names
appear in these books, and the liability of stockholders is
made to depend upon the number of shares subscribed for.
The burden, it is said, was on the plaintiff not only to
show that there were certain stockholders, which, at the
most, is all the books introduced show, but also to prove
that no more shares had been subscribed for. . . . The book
introduced seems to have been designed for the stock and
transfer book. It is true that its contents are not shown
here further than is above stated. So far as its contents
are set out it corresponds with what is required by the code.
The fact that the book is not named as the code requires is
not material. The code does not require that there shall be
a subscription-book, nor direct how subscriptions shall be
made. It does not appear that this corporation had any
other book showing who the subscribers were. The suit
is by strangers to the corporation against its stockholders.
I think these books, together with the testimony, sufficient.
(*Evans* v. *Bailey,* 66 Cal. 112, [4 Pac. 1089].)" In con-
nection with appellants' further argument on this same
point, they say: "The defendants R. R. Teemley, H. P.
Coleman, and S. M. Gardiner testified that they each held no
stock in the company at the time the action was brought,
and that no re-registry was made or attempted to be made
by them. There is no proof in the record showing what
the holdings of any of the other defendants appealing
were; and the finding that they were the holders of the
shares set opposite their names finds no support in the evi-
dence." The answer to this is that the record discloses con-
clusively (1) that the majority of the defendants and appel-
lants admitted, by their answers, the ownership of stock

as alleged in the complaint, and (2) that under such condition of the record no further proof as to the last mentioned defendants was necessary; hence, the proof which was offered and received over appellants' objection was necessarily limited to those defendants who had by their answers denied such allegations of the complaint as charged them with owning the amount of stock alleged. Manifestly, this must be true when the answers of the three defendants referred to are examined. So far as the appellants Teemley, Colcman, and Gardiner are concerned, the issue, so far. as material here, was presented by their answers in the following language: ". . . .defendants deny that they are *subscribers or owners or holders* of shares of stock," etc. It is contended that this is not a denial that they were owners at the time of the filing of the complaint. This contention is without merit, so far as this case is . concerned. The record discloses that on the trial, when this became apparent, counsel for these defendants stated that it had been their intention to put these matters in issue as of the time of the filing of the complaint, which statement was accepted by plaintiffs' counsel, who thereupon proceeded to prove their case accordingly.

Of the seven defendants who answered, joining issues on the foregoing alleged fact, the evidence did not support the allegations of the complaint as against two of them—Cody and Shippey—and hence, in the findings and judgment each of them was eliminated as not being stockholders at the time of the commencement of this action. As to the remaining five contending defendants, there can be no doubt, we think, about the correctness of respondents' contention. The findings are amply supported by the evidence. There was some little conflict in some of the evidence on this issue, but that has been resolved by the lower court in plaintiffs' favor. This being true, we cannot interfere.

[6] This brings us to the consideration of the last point urged by appellants. It appears from the record that as to certain defendants default had been entered for their failure to answer the first amended complaint, and that thereafter, by leave of court, a second amended complaint was filed, which was not served on any of such defaulting defendants. The second amended complaint, appellants contend, contained an amendment in matters of substance,

thereby opening the defaults theretofore entered; and hence, no service having been made of such second amended complaint upon the defaulting defendants, the judgment was improperly entered against them. We have examined both complaints. The first amended complaint was in one count; the second was in two counts. For all practical purposes, the second amended complaint is identical with the first, except that the second count thereof contained, by reference, every paragraph of the first count, except the ninth; and for this it was alleged that the promoters of the corporation had transferred a certain purported oil lease to the company in exchange for all of the stock of the corporation, as fully paid up and nonassessable, and that a valuation upon such oil lease equal to the authorized capital stock of the corporation was so grossly excessive that it would be, as to the creditors, constructively fraudulent, instead of alleging a flat payment of twenty cents per share upon the stock, as set forth in the first count. It is conceded that the test as to whether an amendment opens a default is that if it goes to the substance, the default is opened; but if only to the form, it is not. Did the amendment in this case go to the substance? We think not. The first count of the first amended complaint stating a cause of action, the default admitted the truth of its allegations; and the judgment against the defaulting defendants was no more than an admission of said allegations, which showed the amount to which the plaintiff corporation was entitled. It was, therefore, not necessary to serve said defaulting defendants with the second amended complaint.

Judgment affirmed.

Finlayson, P. J., and Sloane, J., concurred.