## J. W. WINTER *v.* THE BELMONT MINING CO.

PURCHASER OF STOLEN CERTIFICATE OF STOCK.—If W, being the owner of certain shares of the stock of a corporation, causes them to be transferred on the books of the Company to M, to whom a certificate is issued in due form, and if M thereupon endorses the certificate in blank, and delivers it to

W, from whom, while so endorsed in blank, and while M still stands on the books of the Company as the registered owner, the certificate is subsequently stolen by M, who puts it on the market, and it is purchased in the usual course of business, in good faith and without notice, by a third person—the purchaser will acquire a valid title to the stock, as against W.

APPEAL from the District Court of the Fourth Judicial District, San Francisco.

The plaintiff was the owner of certain shares of the capital stock of the defendant, and caused them to be transferred on the books of defendant to the name of " M, Trustee." M afterwards endorsed the certificates in blank, and delivered them to plaintiff. Subsequently he stole them from the plaintiff and sold them in the market, the purchaser taking them in the ordinary course of business, in good faith, and without any knowledge of plaintiff's claim, and at their full market value. After the sale the plaintiff discovered the theft, notified the defendant thereof, and demanded a transfer of the shares. The demand was refused, and thereupon the plaintiff brought this action for conversion. Judgment was rendered for the plaintiff, and the defendant appealed.

*Jarboe & Harrison* and *Stewart & Greathouse*, for Appellant.

By causing the stock to be registered in the name of " M, Trustee," the plaintiff held him out to the world as the owner, and gave him power to dispose of it. (*Weston* v. *Bear River & Auburn W. & M. Co.* 6 Cal. 425; *Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Cal. 112.)

Plaintiff is estopped from questioning any act of M in disposing of the stock. (46 N. Y. 329; 55 N. Y. 41; 57 N. Y. 616.)

He is bound by the consequences of any negligence on his part which enabled M to dispose of the stock. (4 Bing. 253; 21 N. Y. 531.)

The legal title of the stock was never in the plaintiff, but at all times in M, and a *bona fide* purchaser, without notice, from the holder of the legal title took the legal title, coupled with an

equitable title, which was superior to the title of the plaintiff. (49 N. Y. 210.) M, after endorsement, was trustee of plaintiff. (52 N. Y. 210.) A sale by a trustee holding the legal title to a *bona fide* purchaser, for value, will bar the rights of the *cestui que trust.* (Story's Eq. Jur. secs. 977, 1264; Civil Code, secs. 856, 869; 48 N. Y. 607; 57 N. Y. 623.)

*S. W. Holliday,* for Respondent.

It being a conceded fact that the plaintiff was the true owner of the stock at the time of the theft, his right to the property cannot be divested without his consent. No man can convey to another a better title than he has himself. (42 Cal. 99; *Sherwood* v. *Meadow Valley Mining Co.* 50 Cal. 412; 13 N. Y. 626; 20 Wend. 267; 46 N. Y. 335.)

By the Court, Crockett, J.:

In *Weston* v. *Bear River and Auburn W. and M. Co.* 6 Cal. 425, the action was a bill in equity, alleging that the plaintiff purchased at execution sale certain shares of the capital stock of the defendant corporation, which stood on the books of the corporation in the name of Lovell, the defendant in the execution. It was further alleged that the defendant Swift had possession of some, and the defendants Reese & Buckingham of others of the certificates, which they refused to surrender, and the prayer of the complaint was for a decree to compel the surrender of the certificates, and that the corporation issue new certificates to the plaintiff. It appeared from the answers that the certificates held by Swift had been hypothecated to him, and those held by Reese & Buckingham had been sold to them, before any lien had attached thereon in the suit in which the execution issued, under which the plaintiff purchased, and that when he purchased he had notice of such sale and hypothecation; and further, that the certificates held by Reese & Buckingham had been surrendered, and new certificates issued to them. The Court found the facts to be as alleged in the complaint and answers, and entered a decree for the plaintiff. On appeal, it became necessary for this Court to pass upon the provisions of

the Corporation Acts of 1850 and 1853, regulating the transfer of the shares of a private corporation.  These provisions were substantially the same as sec. 324 of the Civil Code, which provides that when the capital stock of a corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, "and may be transferred by indorsement by the signature of the proprietor, or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid, except between the parties thereto, until the same is so entered on the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares, and the date of the transfer."

In construing similar provisions in the Acts of 1850 and 1853, the Court, in the Weston case, said: "A party who purchases, at Sheriff's sale, stocks of an incorporation, knowing that the certificates of such stock have been previously hypothecated, is chargeable with notice of such fact, and takes subject to the claim of the pledgee.  Neither the Incorporation Law of 1850 or 1853 was intended to cover a case of this kind, *but apply only to transfers and purchases in good faith without notice.*" It therefore decided that the plaintiff was not entitled to equitable relief, and the judgment was reversed.  The Court reached this conclusion solely on the theory that the statutes regulating the transfer of certificates of stock in a private corporation imparted to the certificates, as between third persons, the character of negotiable instruments.  The effect of the decision was that if the certificates had been hypothecated before the attachment lien accrued, and if the purchaser at the execution sale took with notice of the prior hypothecation, he acquired no rights as against the pledgee.  The reverse of the proposition would, of course, be true, and if he had purchased without notice, his title would have prevailed as against the pledgee; or as the Court expresses it, that the provisions of the statute "apply only to transfers and purchases in good faith without notice."  In other words, that the statute had placed the certificates in so far on the footing of negotiable instruments, that if they had been hypothecated before the attachment lien accrued. nevertheless if the purchaser at the Sheriff's sale to

enforce the lien had purchased without notice of the hypothecation, he would have acquired a valid title as against the pledgee.

In the subsequent cases of *Naglee* v. *Pacific Wharf Co.* 20 Cal. 533, and *People* v. *Elmore*, 35 Cal. 655, similar questions arose; and though not fully approving the decision in the Weston case, the Court thought it was too late to disturb it after so great a lapse of time, and that it ought to stand, on the principle of *stare decisis*. This consideration has acquired much additional force from the long period which has since elapsed; and even though we entertained a grave doubt as to the soundness of the original decision, we think it ought not now to be disturbed.

Assuming that decision to be correct, the principle which it decides is not distinguishable from that involved in this case. If the purchaser in good faith and without notice, under an attachment levied on stock in a corporation, as the property of the registered owner, will acquire a good title as against a prior pledgee or purchaser of the certificate, certainly a purchaser at private sale in good faith, and without notice, in the usual course of business, of a certificate issued to the registered owner, and duly indorsed by him, ought to stand on at least as favorable a.footing. In support of these views, we refer also to the case of *Brewster* v. *Sime*, 42 Cal. 139, and *Thompson* v. *Toland*, 48 Cal. 112, much of the reasoning in each of which is applicable to the question under discussion.

In the case of *Sherwood* v. *Meadow Valley Mining Co.*, 50 Cal. 412, our attention was not called to the foregoing decisions, nor to the statute regulating the transfer of stocks in private corporations. Without referring to these decisions or to the statute on which they were founded, counsel in the Sherwood case discussed the sole proposition whether a certificate of this character, on general principles of commercial law, was negotiable in the sense in which bills of exchange and other similar instruments are negotiable, and we held they were not, which was the only point decided in that case.

Judgment reversed and cause remanded.