## BARSTOW *v.* SAVAGE MINING CO.

(*Supreme Court of California, December 26th, 1883.*)

CERTIFICATE OF STOCK NOT NEOGOTIABLE—SALE OF STOLEN CERTIFICATES PASSES NO TITLE. Certificates of stock are not securities for money in any sense, and are not negotiable; and if shares of stock of a corporation standing in the name of A on the books of the corporation, owned by B, the certificate being properly indorsed, and if the certificate be stolen without the fault of B, the purchaser from the thief takes no title, and B may pursue the property.

MYRICK, J., delivered the opinion of the Court:

The facts of this case, as presented in the findings, are substantially as follows:

Prior to February 5th, 1879, the defendant, the Savage Mining Company, duly issued its three certificates of stock, No. 24,843, certifying that C. A. Schmitt, trustee, is entitled to thirty shares of the capital stock of the said company, transferable on the books of the company by indorsement on and surrender of the certificate, No. 25,537, in the name of Randolph, Mackintosh & Company, trustees, for ten shares, and No. 25,704, in the name of Greenbaum, Helbing & Company, trustees, for ten shares, in like tenor as the first. On the 5th of February, 1879, the plaintiff purchased from the owners thereof, for value paid, the said fifty shares, and received the said certificates properly indorsed. Thereafter, on or about May 1, 1879, the said certificates were, without any fault or negligence of

the plaintiff, stolen from him, and were on the 6th of May, 1879, sold and delivered by the thief to the defendant Rogers, he, Rogers, purchasing the same in the usual course of business for value, without notice of any defect in his vendor's title. The plaintiff never sold the certificates or the stock which they represent, or authorized or acquiesced in, or ratified such sale. On the 30th of May, 1879, plaintiff demanded of the defendant, Rogers, the return of the certificates, and Rogers refused to deliver them. The intervenor, Kutz, purchased the certificate for thirty shares, subsequently to the theft, in the ordinary course of business, for value, without notice of any defect in his vendor's title, and whatever title he (Kutz) has, he derived from Rogers. None of said fifty shares have been transferred on the books of the company from the names of the parties set forth in said certificates, except the ten shares represented by certificate No. 25,537, which have been sold for assessments. After the theft the plaintiff duly demanded of the company a transfer of said fifty shares from the names in which they stand as aforesaid, to his own name, and the issuance to him of a certificate therefor, and such transfer and issuance were refused. On the 11th of August, 1879, the intervenor presented certificate No. 24,843 to the company, offered to pay any assessment levied on the stock represented thereby, and demanded a transfer to himself of the thirty shares, and the issuance to him of a new certificate, which transfer and issuance were refused on the ground that the company had already been notified by plaintiff of his ownership of the stock and of the theft, and been directed to stop transfer thereof, and had been, in connection with Rogers, sued by plaintiff concerning the ownership of the stock. The Court then found as to the value of the stock at different times involved in the transactions. From these facts the Court below concluded as law that the intervenor, Kutz, was entitled to judgment against the plaintiff and the company for his costs, and against the company for $460 damages, and that the defendant, Rogers, was entitled to judgment against the plaintiff for his costs, and rendered judgment accordingly. From this judgment the plaintiff appealed.

It will be seen from the foregoing, that the question for consideration is, if shares of stock of a corporation standing in the

name of A on the books of a corporation be owned by B, the certificate being. properly indorsed, and if the certificate be stolen without the fault or negligence of B, does the purchaser from the thief take title so as to prevent B from claiming the property ?

*First*—It is well known to be the general rule that a thief acquires no title to stolen property, and that he can pass none. "The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give a good title." (*Covill* v. *Hill*, 4 Denio, 323.)   To the general rule above stated there are exceptions as to money and negotiable securities.

*Second*—A negotiable instrument is defined to be "a written promise or request for the payment of a certain sum of money to order or bearer." (Sec. 3087, Civil Code.)   There are six classes of negotiable instruments, namely: 1, bills of exchange; 2, promissory notes; 3, bank notes; 4, checks; 5, bonds; 6, certificates of deposit.   Sec. 3095, Civil Code.

A certificate of stock, namely, that A is the owner of shares of stock in an incorporated company, is not a promise or request for the payment of money, nor does it contain any of the elements of such promise or request.   "A negotiable instrument must not contain any other contract than such as is specified in this article."   Sec. 3093, Civil Code.

"The distinction between all these [notes, bills, corporation bonds] and corporate stocks is marked and striking.   Certificates of stock are not securities for money in any sense, much less are they negotiable securities.   They are simply the muniments and evidence of the holder's title to a given share in the property and franchises of the corporation."   *Mechanic's Bank* v. *New York, etc., R. Co.*, 13 New York, 627; *Sherwood* v. *Meadow Valley Mining Co.*, 50 Cal., 412.

The case last above cited, *Sherwood* v. *Meadow Valley Mining Co.*, was an action based on the following facts:   One Schmeidell was the owner of twenty shares of the stock of the defendant and held a certificate therefor, issued to himself as trustee, and he sold the shares and delivered the certificate, properly indorsed, to Levy, who lost the same, not having had the stock transferred on the books of the corporation.   The plaintiff pur-

chased, as he supposed, the stock, and received delivery of the certificate, for value, in the usual course of his business as a stock broker. It was held that the plaintiff acquired no right to the stock.

In the subsequent case of *Winter* v. *Belmont Mining Co.*, 53 Cal., 428, the facts were that Winter was the owner of certain shares of stock, and had them transferred on the books of the company to the name of "M, trustee," who indorsed the certificates in blank, and delivered them to Winter. Subsequently M stole the certificates from Winter, and sold them in the market in the ordinary course of business. The Court, in commenting on the statute providing that shares of stock may be transferred by indorsement and delivery of the certificate, but that the transfer is not valid except as between the parties until entered on the books of the corporation, and on certain prior cases holding that until such entry, the stock may be sold on execution against the person in whose name the stock stood, applied that principle to the case before it of stolen certificates, and held that the purchaser from M, the thief, took a good title. We are not prepared to follow that case, *Winter* v. *Belmont Mining Co.*, in what is said in the opinion regarding the negotiability of certificates of stock; but, on the contrary, are of opinion that the principle that the thief of stolen property, it not being money or negotiable securities, can pass no title, should be maintained. unless the facts presented by a case should bring it within the law as stated in *McNeil* v. *The Tenth National Bank*, 46 N. Y., 325: "When the owner of property confers upon another an apparent title to or power of disposition over it, he is estopped from asserting his title as against an innocent third party who has dealt with the apparent owner in reference thereto without knowledge of the claims of the true owner." Upon referring to the transcript in *Winter* v. *Belmont Mining Co.*, we observe the findings of the Court state that Winter delivered his certificates to M with permission that the latter have the shares of stock transferred on the books and certificates issued to him, M, for the purpose of enabling the said M to vote at the then coming election as the owner of said stock. Here was an element upon which, perhaps, it might properly be held that Winter was estopped from saying, as to an innocent purchaser, the title did not pass; be-

cause, for one purpose at least, viz: to vote, he had authorized M to appear to be and act as the owner.

But if the purchaser from one who has not the title, and has no authority to sell, relies for his protection on the negligence of the true owner, he must show that such negligence was the proximate cause of the deceit.

In the case at bar, the owner, Barstow, did not clothe the thief with any apparent power to pass title. The certificates, though properly indorsed, remained in the names of the former owners, and when Rogers purchased he was not dealing with any one who had apparent authority from the owner to make a disposition of the stock ; he dealt with one having nothing beyond bare possession, which, as said above, does not clothe the possessor with the power of selling.

In conclusion, then, we are of opinion, and decide, that where stock of an incorporation stands on the books in the name of A, and the stock is owned by B, and the certificate, though properly indorsed, is stolen from B without his fault, the thief can pass no title and B may pursue his property.

The judgment is reversed and the cause is remanded, with instructions to render judgment in favor of plaintiff, but it is not manifest that the plaintiff can have judgment against Rogers for the value of the stock, and also that the corporation issue new certificates to him; he may have one or the other, as he elects, but not both. It is stated in the findings that the shares represented by certificate No. 25,537, have been sold for assessments. Plaintiff being the owner of those shares, he should have paid the assessments, and neither Rogers nor the corporation should have been held responsible for his omission to do so.

▸ ● ◂

*Tax-Sales—Fraudulent tax-sales—Action by tax-payers—Tender.* The tax-payers of a county are the proper parties to bring a suit against the county supervisors for alleged fraudulent sales of tax certificates. Where the suit is against the supervisor for such fraudulent sales, and the prayer is for an injunction to restrain further sales of like character, a Court of equity has authority to set aside the illegal sales, and also to grant the in-