[Sac. No. 1293. In Bank.—September 20, 1904.]

## JOHN J. BAUER, Appellant, v. STATE OF CALIFORNIA, Respondent.

COYOTE BOUNTY ACT—ACTION BY ASSIGNEE IN TRUST FOR COLLECTION.—
Under the act of 1901, authorizing suits against the state upon claims accruing under the Coyote Bounty Act of 1891 by the "owners or holders of claims or demands," actions may be maintained either by assignees succeeding absolutely to the title of the former owners by assignment, or by assignees of such claims in trust for collection.

ID. — EVIDENCE — EXECUTION OF SUPPLEMENTAL INSTRUMENTS — SUF-
FICIENCY OF PROOF.—One who personally procured the bounty claims in suit, and obtained powers of attorney from each of the claim-

ants to a bank, and subsequently obtained a supplemental instrument from each of them constituting the bank an assignee in trust for collection in its name, with power of substitution, may by his positive testimony sufficiently prove the execution of the supplemental instruments. The mere fact that he was not personally present at the time of their execution does not negative his knowledge of the signatures, in the absence of any cross-examination as to his means of knowledge.

ID.—CONSTRUCTION OF SEPARATE INSTRUMENTS AS ONE.—Where each of the supplemental instruments signed by a claimant is by its terms made part of the original power of attorney executed by the same claimant, the two instruments are to be deemed as one.

ID.—RESOLUTION BY BANK—SUBSTITUTION OF PLAINTIFF—EVIDENCE OF ASSIGNMENT IN TRUST—IMPROPER RULING—NONSUIT.—A resolution by the board of directors of the bank (which had been, by the several supplemental agreements in proof, constituted an assignee in trust for collection, with power of substitution), by which the bank substituted the plaintiff to each and all of the powers conferred upon the bank, was admissible to prove an assignment in trust to the plaintiff for the purpose of collection, and it was error to exclude such evidence and to nonsuit the plaintiff.

ID.—DEPOSITIONS PROPERLY EXCLUDED—NOTICE OF CONTINUANCE NOT GIVEN.—Where the depositions of witnesses noticed for a particular day were not then taken, they were properly excluded if it appears that the opposite party had no notice of a continuance of the time for taking them.

APPEAL from a judgment of the Superior Court of Sacramento County. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

T. C. Spelling, and Grove L. Johnson, for Appellant.

U. S. Webb, Attorney-General, George A. Sturtevant, Deputy Attorney-General, and Devlin & Devlin, for Respondent.

LORIGAN, J.—This action was brought by plaintiff to obtain a judgment against defendant on claims for bounty on coyote scalps, and was prosecuted under "An act authorizing suits against the state on claims or demands arising under an act of the legislature entitled 'An act fixing a bounty on coyote scalps,' approved March 31, 1891, and regulating the procedure therein." (Stats. 1901, p. 646.)

Plaintiff sued as the assignee in trust of some two hundred

bounty claimants, and his complaint contained a separate count on each of said claims, the aggregate amount for which judgment was sought being $5,260.

The evidence in the case was addressed in detail to proof of plaintiff's right to recover as assignee of one Ramon Silvas, it being stipulated that the evidence and proceedings in the case with reference to the proof of that claim should govern and apply to the other claims mentioned in the various counts in the complaint.

At the close of the plaintiff's case the court granted a nonsuit, and, judgment having been entered accordingly, plaintiff appeals from such judgment upon a bill of exceptions.

It is apparent from the record that the particular ground upon which the nonsuit was granted was, that in the opinion of the court there was no evidence to support the claim of plaintiff that he was the assignee in trust or otherwise of Ramon Silvas, or any of the other bounty claimants.

Upon this particular matter it is insisted by the appellant, under his bill of exceptions, that the court improperly excluded certain evidence offered by him tending to prove that he was such assignee, and which, had it been admitted, he claims would have sustained his position in that regard, and this presents the only point which we think requires special consideration. If the proffered evidence was correctly excluded, then the judgment of nonsuit was proper; if not, the judgment must be reversed.

Plaintiff, in support of his right to maintain the action as alleged assignee, introduced in evidence, without objection, an instrument in writing, consisting of three parts, the first two being separate powers of attorney, dated October 20, 1897, and executed by Ramon Silvas and by each of the other claimants mentioned in the complaint, in favor of the California State Bank, a corporation, authorizing and empowering it "for me and in my name" to receive from the state controller any warrant, and from the state treasurer any money, authorized to be delivered or paid by any act of the legislature, on his claim for such bounty; and further granting to the bank full power of substitution. The third part of the instrument was of the same date, and consisted of an authorization to said bank to pay to one T. C. Spelling, attorney for each

claimant, one third of all money collected, less charges and expenses of collection.

These powers of attorney did not pretend to carry any assignment of the claims, or to confer any authority upon the bank to take any measures toward their collection, save as attorney in fact and in the name of the various claimants.

The plaintiff then offered in evidence a resolution of the board of directors of the California State Bank, adopted May 17, 1901, reciting the execution of the foregoing powers of attorney, and substituting the plaintiff "in place of this bank as the attorney in fact under and by virtue of all such powers with the authority conferred thereby."

To this offer defendant objected upon the ground that the instruments referred to in the resolution "were mere powers of attorney; that the California State Bank had no title to assign or substitute, and that by said assignment the plaintiff derived no title to the claims set out in the complaint and could not be substituted."

Pending a ruling on this objection, and to obviate its force, the plaintiff undertook to produce additional evidence, and in that behalf the attorney for the plaintiff, T. C. Spelling, was sworn as a witness and testified, that in the summer of 1897, while at Bartlett Springs, he undertook the procurement of coyote-scalp claims against the state, and arranged with the California State Bank to have the powers of attorney above referred to taken in its name; these were printed and some forwarded to the claimants for signature before he returned to San Francisco. When he reached that city he discovered that these powers had not been printed according to the copy he had furnished, and that certain words and provisions had been omitted therefrom. At this point in his testimony he produced a written instrument which he testified was a pencil copy of an original, reading as follows: "Whereas by a clerical mistake and oversight the words 'or in its own name or in the name of any person substituted by it as herein provided' after the words 'in my name' wherever they occur are omitted from a certain agreement in three parts of this date made, executed and delivered by me to the California State Bank, said mistake and omission is by me hereby corrected and the said words are hereby, and by the force and effect of this instrument, inserted and incorporated in said

agreement, at all the places indicated in all the parts of said agreement, without further act on the part of any party to said agreement, and whereas T. C. Spelling has heretofore, acting in the place of said bank paid me the sum of twenty-five cents for an assignment of the claims and demands mentioned in said agreement for the purpose of carrying out the purposes of said agreement by said bank, which by like clerical mistake was omitted therefrom, it is now agreed that said agreement be, and the same is hereby, corrected by inserting at the end of each of the first two parts of said agreement the words 'and for all the purposes hereof said corporation shall be, and is hereby created and constituted the assignee in trust of the undersigned as to all said claims and demands, and this instrument shall be considered as signed as of any and all future dates when used by said bank.' Full force and effect shall be given this instrument of even date with said instrument in three parts hereby corrected and both together shall constitute the entire agreement between the parties thereto.'' The witness then testified that he had had printed as many copies of this latter supplemental instrument as there had been printed powers of attorney first referred to, and that ''these were signed by all who had previously signed the said instrument in three parts, one of which was signed by Ramon Silvas, and by all who subsequently signed it, and all were delivered to me as agent for the California State Bank. I was not present at the time of the signing of said papers. The nominal consideration of twenty-five cents was paid to each of the claimants executing these instruments. The persons referred to as having executed and delivered said writings are those named in the complaint and in said papers offered to prove the substitution of plaintiff, and were introduced on a previous trial of this action. I was not present at the payment of said consideration.'' The witness further testified that all these instruments from the claimants were received in the latter. part of 1897, and prior to May, 1898; that about May, 1898, the witness became too ill to attend to business, and gave up his office, and stored all his papers, including the originals, one of which, the paper in pencil above set forth, was a copy, in a warehouse in San Francisco; that in the summer of 1898 one W. S. Cull, who had signed the original powers of attorney and the supple-

mental instrument, asked witness to permit him to examine the papers he had signed and delivered, and witness accompanied him to the warehouse and allowed him to do so. While there the witness took a full copy in pencil of the supplemental instrument signed by Cull, which was the copy he was testifying about; that the originals were all identical save as to signature and dates of execution; that subsequently the case which contained all these originals broke open in the warehouse, and through the neglect of those in charge such originals were lost; that witness had made diligent search and inquiry of those in charge of and employed in the warehouse, but was unable to find them.

Upon this testimony the plaintiff offered, and the court admitted in evidence, the pencil copy, but sustained the objection of defendant to the resolution of the board of directors of the California State Bank offered by plaintiff to prove his substitution in place of the bank. And the plaintiff offering no other evidence a nonsuit was granted.

As we gather it from the discussion between counsel and the court, appearing in the record, when the final offers on this point were made, the court, notwithstanding it had admitted in evidence the pencil copy, held that the evidence taken altogether was insufficient to show that the originals of which it purported to be a copy were executed.

We are of the opinion, however, that the evidence was sufficient for that purpose. The testimony of the witness Spelling was addressed solely to the matter of execution. His testimony, as we understand it, was direct and positive that the originals, identical in all respects save as to name and date with the pencil copy, had been executed by all those who had signed the original powers of attorney to the bank, and particularly by the claimant Ramon Silvas; that they had been executed by all those who were mentioned in the complaint as bounty claimants; and that as so executed they had been delivered to him as agent for the bank.

It appears to us, in the face of this uncontradicted and unquestioned testimony, that it was sufficiently proven as a fact that these instruments were all executed by the parties.

It is true that he testified that he was not present when these supplemental instruments were signed. But the simple circumstance that he was not present did not conclusively

negative the possession of other sufficient knowledge by him upon which his unequivocal declaration that they were signed by the parties could be based. Proof of the execution of an instrument is not limited to the testimony of one who actually saw it signed. There are other methods by which the necessary knowledge may be acquired which would permit one to swear to the fact. (Code Civ. Proc., sec. 942 et seq.) A person may be sufficiently familiar with the signature in question to swear to its genuineness, although he did not see the party sign it. In this view the positive statement of a witness that an instrument was signed by a given person is not overcome because it incidentally appears that he was not present when it was signed.

All the testimony relative to the execution of these instruments was given by the witness on his direct examination. No cross-examination was had. If the defendant desired to question the accuracy of the positive statement of the witness that these documents were executed, he could have done so; could have tested the accuracy of his general statement in this particular, or investigated his ability, capacity, or qualification to testify upon the subject. Having failed to do so, his general statement of the execution of these instruments should have been accepted as sufficient proof thereof, as far as plaintiff's case was concerned, as the simple fact that the witness did not see the instruments executed did not exclude all means of knowledge which he might have possessed, upon which his declaration could be supported.

This evidence was *prima facie* sufficient to show execution of these supplemental instruments, to be used in connection with the original powers of attorney, of which in terms they became a part. Together they must be deemed ·one instrument, and as such expressly constituted the bank the assignee in trust for the claimants as to their bounty claims, with power of substitution for general purposes of collection, and the bank, as authorized thereunder, having by proper resolution (long after such supplemental instruments were executed and became effective) substituted the plaintiff, with all the powers and authority conferred on it, the court should have allowed such resolution in evidence, as establishing the right of the plaintiff as such assignee in trust to maintain the action in behalf of such claimants. Under the act of 1901, authorizing

these suits against the state, it is provided that they may be maintained by the "owners or holders of claims or demands." This general language authorizes actions either by assignees succeeding absolutely to the former owner's title by assignment, or by assignees of such claim for purposes of collection. As respondent makes no point in this respect, however, but only insists that the proof did not show that the plaintiff was assignee for any purpose, further discussion of this point is unnecessary. Our conclusion is, that it was error to refuse to admit the resolution of substitution of the plaintiff in place of the bank, and that the judgment must be reversed on that account.

Another ground urged for reversal is the refusal of the court to allow certain depositions tending to support the execution of these supplemental instruments to be admitted in evidence. These depositions were noticed to be taken on a certain day; they were not so taken, and the court was warranted, under the evidence, in finding that the defendant had no notice of a continuance of the time for taking them, and, hence, properly suppressed them.

We have thus far considered this case on the particular points presented on this appeal relative to the evidence and rulings of the court thereon. Aside from insisting that the rulings of the court were correct, the respondent presents the same points against the right of the plaintiff under any circumstances to recover, as urged by it in the case of *Bickerdike* v. *State, ante,* p. 681,—the constitutionality of the statute, etc. That case has just been decided adversely to the respondent upon all these points, and nothing further than a reference to the opinion in that case, where these matters are fully discussed, is necessary.

The judgment of the lower court, for the reasons that we have assigned, is reversed, and the cause remanded for a new trial.

McFarland, J., Angellotti, J., Shaw, J., Van Dyke, J., and Henshaw, J., concurred.