[Sac. No. 2051. Department Two.—June 4, 1914.]

ISAACK KOHN, Respondent, v. SACRAMENTO ELEC-
TRIC, GAS AND RAILWAY COMPANY, CALIFOR-
NIA GAS AND ELECTRIC CORPORATION, PA-
CIFIC GAS AND ELECTRIC COMPANY, and MER-
CANTILE TRUST COMPANY OF SAN FRANCISCO,
Defendants and Appellants; MUTUAL SAVINGS
BANK and WESTERN NATIONAL BANK OF SAN
FRANCISCO, Defendants and Respondents.

CORPORATION—NEGOTIABLE INSTRUMENTS—BONDS SECURED BY MORTGAGE
—CONDITIONS NOT CERTAIN OF FULFILLMENT—REFERENCE TO MORT-
GAGE.—Bonds of a corporation, with their attached coupons, although
upon their faces payable to bearer, are not negotiable instruments,
where they contain conditions not certain of fulfillment, and recite
that they are issued subject to the provisions of a mortgage given
to secure their payment, which mortgage also contains similar con-
ditions not certain of fulfillment.

ID.—BONDS DEPENDENT ON MORTGAGE NOT NEGOTIABLE—HOLDER WITH
NOTICE.—So far as affects the question of negotiability, there is no
essential difference between a bond and a promissory note, and either
of such instruments, if dependent upon a mortgage, is subject to all
equitable defenses against a holder with notice.

ID.—BONDS PAYABLE FROM SPECIAL FUND — ABSOLVING STOCKHOLDERS
FROM INDIVIDUAL LIABILITY.—Corporate bonds secured by mortgage
are not payable upon the general credit of the maker, but out of a
special fund, if they provide that neither the trustee nor any bond-
holder shall have recourse to any personal, statutory, or constitu-
tional liability against any stockholder of the mortgagor, and that
payment shall be limited "solely to the corporate assets and fran-
chises of the mortgagor," and that these assets shall not embrace
claims enforceable by creditors, a receiver, or the mortgagor itself

CLXVIII Cal.—1          (1)

against a stockholder, director, or officer of the corporation, or against a stockholder by reason of any alleged insufficiency in the payment for shares of stock. Such provisions are at war with the idea of negotiability.

Id.—Stockholder's Liability may be Waived by Contract.—The provision of such bonds absolving the stockholders of the mortgagor from individual liability is not unconstitutional. A stockholder's liability may be waived by contract.

Id.—Custom cannot Make Non-negotiable Bonds Negotiable Instruments.—In view of the positive provisions of section 3093 of the Civil Code that a negotiable instrument must not contain any contract other than such as are permitted by the sections of title XV, chapter I, article I, of that code, the courts are not at liberty to treat such bonds as negotiable instruments, notwithstanding the existence of a custom to so regard similar bonds.

Id.—Belief of Officer That Bonds were Negotiable cannot Alter Their Terms.—The fact that an officer of the corporation issuing such bonds believed them to be negotiable did not alter their terms, which were ample notice to all persons who might purchase them, that they were subject to all of the provisions of the mortgage.

Id.—Bonds Deposited With Trustee for Special Purpose—Theft by Officer of Trustee—Maker not Estopped to Deny Pledge.—Where bonds of a corporation, secured by a trust mortgage, each on its being made payable to bearer and bearing the certificate of the trustee that it was one of the series of bonds secured by such mortgage, are feloniously taken by an officer of the trustee and pledged for his individual purposes, while the same were in the custody of the trustee upon a special trust for the purpose of retiring other underlying bonds, the corporation is not estopped to deny the validity of the pledge or the authority of such officer to so dispose of them, as against a pledgee who had made no inquiry of the corporation as to the authority of such officer.

Id.—Distinction in Application of Doctrine of Estoppel.—In the application of the doctrine of estoppel, based upon the principle that, when one of two innocent persons is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong, there is a distinction between the case where an agent or servant *simply had access* to a document remaining in the possession of the owner, and the case where the possession *is intrusted* to the agent for one purpose and he uses it for another. In the first case, the estoppel does not arise, in the latter it does.

APPEAL from a judgment of the Superior Court of Sacramento County.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

Wm. B. Bosley, and L. T. Hatfield, for Appellants Sacramento Electric, Gas and Railway Company et al.

Morrison & Brobeck, and Morrison, Dunne & Brobeck, for Appellant Mercantile Trust Company of San Francisco.

D. Freidenrich, for Respondent Isaack Kohn.

J. C. McKinstry, and D. C. Murphy, for Respondent Mutual Savings Bank.

Gavin McNab, B. M. Aikins, George W. Mordecai, and Oliver B. Wyman, for Respondent Western National Bank.

MELVIN, J.—This is an appeal from a judgment in favor of the plaintiff and certain cross-complainants in an action based upon the bonds and interest coupons of the Sacramento Electric, Gas and Railway Company secured by a mortgage upon the real and personal property of said corporation. California Gas and Electric Corporation and Pacific Gas and Electric Company were made defendants because they successively acquired the interests of the Sacramento Electric, Gas and Railway Company, the California Gas and Electric Corporation having been also absorbed by the Pacific Company. The interests of the two respondent banks and of the plaintiff Mr. Kohn are practically identical, all depending upon possession and ownership of bonds and coupons. The Mercantile Trust Company appears as the successor of California Safe Deposit and Trust Company, an insolvent corporation, of which the Mercantile has become the trustee.

There is no substantial dispute regarding the facts. Sacramento Electric, Gas and Railway Company issued two thousand five hundred bonds of the par value of one thousand dollars each and they each had semi-annual interest coupons attached. Concurrently with the execution of these bonds and to secure their payment, the Sacramento Company executed and delivered to the California Safe Deposit and Trust Company a trust mortgage, hypothecating certain street railways, franchises, lands, and other property. Indorsed upon each of two thousand and seventy of these bonds bearing serial numbers from one to two thousand and seventy was a certificate by said California Safe Deposit and Trust Com-

pany that such bond was one of the aforesaid twenty-five hundred bonds secured by the mortgage therein mentioned. Pursuant to the provisions contained in said trust mortgage eighteen hundred and five of said bonds, bearing serial numbers from one to eighteen hundred and five were duly issued and sold. Two hundred and sixty-five of said bonds, bearing serial numbers from eighteen hundred and six to two thousand and seventy, both numbers included, were delivered to said California Safe Deposit and Trust Company, as trustee, upon a special trust for the purpose of retiring three hundred and fifteen outstanding bonds of the Central Electric Railway Company which had been absorbed by the Sacramento Company. J. Dalzell Brown, an officer of the California Safe Deposit and Trust Company, feloniously took sixty-five of these bonds from said corporation, and through the offices of Allen Griffiths obtained certain loans nominally for said Griffiths, but really for Brown's benefit. In this way twenty-five thousand dollars were paid by the plaintiff Isaack Kohn, upon the security of twenty-five of these bonds and coupons which Brown had thus dishonestly obtained. Twenty of the bonds were deposited with the Western National Bank of San Francisco to secure a loan of seventeen thousand five hundred dollars borrowed by Griffiths for and by direction of Brown, and the remaining twenty bonds were delivered to the Mutual Savings Bank as collateral security for another loan to Griffiths for Brown. None of this borrowed money ever was credited in any manner to the Sacramento Electric, Gas and Railway Company or to any of the appellants. When Mr. Kohn accepted the bonds from Griffiths he made no investigation regarding them except that he asked Griffiths if the bonds were his own or the property of a banking corporation of which Griffiths was an officer. Griffiths replied that the bonds were his own. Neither of the other respondents made any inquiry regarding the bonds at or before the time of taking said securities. To them Griffiths represented, as he did to Kohn, that he owned the bonds. To the respondents from time to time he paid interest upon the promissory notes which he had given them and received the coupons for accrued interest up to and including November 1, 1907. At the time this action was commenced there were due to the respondents from Griffiths upon his promissory notes the following sums: To respondent Kohn twenty-five thousand dollars with inter-

est from October 22, 1907; to respondent Western National
Bank twelve thousand five hundred dollars with interest from
September 30, 1907; and to respondent Mutual Savings Bank
fourteen thousand five hundred dollars with interest from
October 29, 1907. About May 1, 1908, the respondents de-
manded payment upon the sixty-five bonds held by them as
collateral security for the notes of Griffiths and payment was
refused by the Sacramento Electric, Gas and Railway Com-
pany. In 1908 and before the commencement of this action
Mercantile Trust Company of San Francisco was appointed
trustee under the trust mortgage, succeeding California Safe
Deposit and Trust Company which had been declared insol-
vent. In 1908 Sacramento Electric, Gas and Railway Company
notified respondents that the bonds had been feloniously taken
from the custody of the California Safe Deposit and Trust
Company. The respondents proceeded to foreclose the pledges
made by Griffiths and bought in the bonds themselves at the
foreclosure sale. The court found, however, that they were
pledgees, not owners. The court also found that "at all
times mentioned herein, the bonds and coupons thereto at-
tached, of the kind issued as aforesaid, by Sacramento Elec-
tric, Gas and Railway Company, when certified to by the
trustee under the trust mortgage or deed of trust, are and
were treated and dealt in as negotiable instruments by the
mercantile world generally and more particularly by bankers
and bond buyers and such is and has, at all times been the
usage of the mercantile world in California"; that it was the
intent of the Sacramento Electric, Gas and Railway Company
that the bonds and coupons should be negotiable; that said
corporation always so considered them; and that respondents
had each acted with reliance upon the representations con-
tained in the bonds and coupons and upon the said usage of
the mercantile world. The superior court's conclusions of
law were that the bonds are negotiable instruments; that
respondents hold them as pledges subject to the amounts owed
by Griffiths to respondents; that the Mercantile Trust Com-
pany is entitled to the possession of the said bonds subject
only to the lien of the pledges upon which they are held by
the respondents; that each of the appellants has the right to
redeem the bonds by paying to respondents the amount still
owed to the latter by Griffiths on his promissory notes; that
respondents are entitled to the foreclosure of the trust mort-

gage to enforce payment of all coupons and bonds unless appellants shall exercise their right to redeem; and that appellants are entitled to judgment for the surrender and delivery of the sixty-five bonds and interest coupons upon effecting redemption from the said lien.

The bonds and coupons are upon their faces payable to bearer. It is set forth upon the bonds that the payment of principal and interest is secured by a mortgage, the date of which is given, and the names of the mortgagor and the trustee are given as well as a general reference to the mortgaged property. Each bond also contains the following statement: "This bond is issued subject to all the provisions contained in said mortgage." The bond contains a provision that upon default in the payment of interest or default in the payment of taxes or of any agreement or promise set forth in the mortgage, if such default or defaults continue for the time specified in the mortgage, the principal of the bond shall at the option of the trustee or the holders of a majority of the outstanding bonds become immediately due and payable. By the terms of the mortgage itself similar optional rights of declaring the principal due, after default, are given and the mortgage gives to the holders of eighty per cent of the outstanding bonds the optional right to waive "any default on the part of the Electric Company."

It is the contention of appellants that the bonds, being supported by a mortgage containing conditions not certain of fulfillment and notice of the mortgage and its conditions appearing upon the bonds and coupons themselves, the bonds are not and cannot be negotiable instruments. In other words appellants rely upon the rule announced in *Meyer* v. *Weber,* 133 Cal. 685, [65 Pac. 1110], and emphasized in later decisions, notably *National Hardwood Co.* v. *Sherwood,* 165 Cal. 5, [130 Pac. 881], that a note secured by a mortgage on land, both being executed at the same time as part of one transaction, is not negotiable in law, even if negotiable in form, where the purchaser takes it with knowledge of the existence of the mortgage. It is the belief of counsel for appellants that bonds come under the same rule. Both promissory notes and bonds are listed by the code as among the six classes of negotiable instruments (Civ. Code, sec. 3095), yet a promissory note loses its negotiability when conditions not certain of fulfillment are introduced into it. (Civ. Code,

sec. 3088.)    There is no essential difference between the two kinds of instruments and we see no escape from the logic of the position of appellants that a bond like a note, if dependent upon a mortgage, is subject to all equitable defenses against a holder with notice.    The bonds sued upon are payable not upon the general credit of the maker (Civ. Code, sec. 3088), but out of a specific fund, for it is provided that neither the trustee nor any bondholder shall have recourse to any personal, statutory, or constitutional liability against any stockholder, director, or officer of the Sacramento Electric, Gas and Railway Company; that the trustee or bondholder shall look for payment "solely to the corporate assets and franchises of the mortgagor"; and that these assets shall not embrace claims enforceable by creditors, a receiver or the mortgagor itself against a stockholder, director, or officer of that corporation or against a stockholder by reason of any alleged insufficiency in the payment for shares of stock.    Such provisions are at war with the idea of negotiability.    It is argued that this part of the contract absolving stockholders from individual liability is unconstitutional, but we are of the opinion that a stockholder's liability may be waived by contract.    (*Wells* v. *Black*, 117 Cal. 161, [59 Am. St. Rep. 162, 37 L. R. A. 619, 48 Pac. 1090].)

It is argued that bonds have been so long treated as negotiable instruments that the courts must respect the custom of the country and must make the letter of the statutes bend to it.    Custom is often very important, it is true, in assisting courts to interpret statutes properly, but it never overcomes the positive provisions of statutes.    Section 3093 of the Civil Code provides that a negotiable instrument must not contain any contract other than such as are permittted by the sections of title XV, chapter I, article I of that code.    The bonds here considered are not negotiable under the law merchant in view of that test.    There are many expressions in statutes and opinions to the effect that bonds are now generally treated as negotiable instruments, but many of these statements have reference to the abolition of the old distinction between sealed and unsealed instruments.    In *Comstock* v. *Breed*, 12 Cal. 288, it was declared that the old unmeaning distinction between sealed and unsealed instruments had been determined by statute and that it was "the design of the legislature to place bonds and notes on the same footing in respect to de-

fenses.'' It is true that the old common law rule with reference to assignability of things in action has long since been abrogated and has been succeeded by one more liberal which, while it permits securities to pass from hand to hand in business transactions does not make them negotiable to the extent of cutting off the equities of their makers. Section 1459 of the Civil Code thus formulates the modern rule: ''A non-negotiable written contract for the payment of money or personal property may be transferred by indorsement, in like manner with negotiable instruments. Such indorsement shall transfer all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement.'' Certificates of mining stock and controller's warrants pass readily from hand to hand by assignment, yet the transferee takes them subject to all legal and equitable defenses. (*Barstow* v. *The Savage Mining Co.,* 64 Cal. 392, [49 Am. Rep. 705, 1 Pac. 349] ; *Craig* v. *Hesperia Land and Water Co.,* 113 Cal. 13, [54 Am. St. Rep. 316, 35 L. R. A. 306, 45 Pac. 10] ; *National Bank of D. O. Mills & Co.* v. *Herold,* 74 Cal. 606, [5 Am. St. Rep. 476, 16 Pac. 507] ; *Wall* v. *Monroe,* 103 U. S. 77, [26 L. Ed. 430].) It has been decided by the supreme court of the United States that purchasers of municipal bonds are bound to take notice of all of the recitals therein. (*McClure* v. *Township of Oxford,* 94 U. S. 432, [24 L. Ed. 129].) There seems to be no good reason why bonds should be placed in a class governed by different principles than those applicable to notes.

Counsel for the appellants cite with confidence the case of *McClelland* v. *Norfolk Southern R. R. Co.,* 110 N. Y. 471, [6 Am. St. Rep. 397, 1 L. R. A. 299, 18 N. E. 237]. That case greatly resembled the one at bar. It was a suit on certain coupons to which an equitable defense was interposed. The bonds from which the coupons were cut showed that they depended upon a certain mortgage and the mortgage contained provision for declaring the principal of the bonds due in case of certain defaults, or for postponing all payments of interest or waiving any default upon the option of a majority in interest of the holders of the bonds. The court stated the general rule that bonds payable to bearer are deemed negotiable, but declared that when such instruments contain special stipulations and the payment of them is sub-

ject to contingencies not within the control of the holders, they lose their character as negotiable instruments and are open to any defense existing as between the original parties to the instrument. With the reasoning of the opinion in that case we fully agree. Respondents insist that the later case of *Hibbs* v. *Brown*, 190 N. Y. 172, [82 N. E. 1108], virtually overruled *McClelland* v. *Norfolk Southern R. R. Co.*, but an examination of that case shows that it is not at all in conflict with the earlier decision. It was held that the authorization in the mortgage for the waiver of default in the payment of interest coupons only related to and controlled procedure under the trust indenture itself for the purpose of enforcing payment of coupons and did not for any other purpose work or permit a postponement of the time of payment. It was also held in that case that the bonds had been issued upon the general credit of the corporation and that the exemption of the stockholders from individual liability did not render the other assets of the corporation a special fund and thus make the bonds non-negotiable. That case also announces the rule that courts may not override the terms of a statute when finally interpreted, and we feel committed to the interpretation of the pertinent sections of the Civil Code as given in *Meyer* v. *Weber*, 133 Cal. 685, [65 Pac. 1110] ; *National Hardwood Co.* v. *Sherwood*, 165 Cal. 1, [130 Pac. 881], and *Taylor* v. *Jones*, 165 Cal. 108, 111, [131 Pac. 114].

If the bonds had been stolen from the vaults of the Sacramento Company and negotiated, that company would have a complete defense against the holder. But respondents insist that, having intrusted the California Safe Deposit and Trust Company with the bonds under circumstances clothing that company with apparent power of complete disposition thereof, the Sacramento Electric, Gas and Railway Company is estopped to deny the authority of an officer of that company to dispose of them. There are many authorities supporting the doctrine that where one of two innocent persons must suffer the loss should be borne by the one whose conduct made possible the fraud or crime by which the other was deceived. The very recent case of *National Safe Deposit and Trust Co.* v. *Hibbs*, 229 U. S. 391, [57 L. Ed. 1241, 33 Sup. Ct. Rep. 818], is cited in that behalf. In that case Meyers, a trusted employee of the Safe Deposit Company, with the consent of that corporation, obtained certain stock certificates which had

been deposited by one Kelley as collateral security for a loan. Each certificate contained an assignment with power of attorney to transfer the stock upon the books of the company. This was signed by Kelley, whose signature was duly attested. It was customary, in the usual course of business, for Myers to procure from one of the officers of the bank and to deliver to any customer paying a loan the collateral security pledged for such loan. At his own request he obtained possession of the certificates belonging to Kelley and by means of the assignment in blank sold them through the offices of a broker, to Hibbs. The pledgee sued the latter and the supreme court of the United States held that the loss should not fall upon the purchaser in good faith. In that case, however, the court found that the broker obtained the certificates "with all the indicia of ownership" from one "who had possession with the bank's consent and who brought the certificates to him apparently clothed with the full ownership thereof." After discussing the principle that an instrument indorsed in blank and stolen before it had been transferred would be taken subject to the equities, Mr. Justice Day, who handed down the opinion of the court, used this language: "The qualification of the rule, as not applying when the instrument is stolen, is not based upon the name of the agent's crime, but upon the fact that, in the ordinary and typical case of theft, the owner has not intrusted the agent with the document, and therefore is not considered to have done enough to be estopped as against a purchaser in good faith. He certainly has not done enough if the estoppel is based upon the principle that, when one of two innocent persons is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. But in the case like the present, the *agent* has been *intrusted* with the converted property, and it is totally immaterial whether, by a stretch which extends largely beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present, and the estoppel arises. The distinction is not new. On the one side are cases like *Knox* v. *Eden Musee American Co.,* 148 N. Y. 441, [31 L. R. A. 779, 51 Am. St. Rep. 700, 42 N. E. 988], where an agent or servant *simply had access* to a document remaining in the possession of the owner; on the other cases like *Pennsylvania R. Co.'s Appeal,* 86 Pa. 80, where possession

*is intrusted* to the agent for one purpose and he uses it for another. It cannot matter in the latter class that the agent intended the fraud from the outset." In the case at bar Brown was not intrusted with these special bonds. The California Safe Deposit and Trust Company was the trustee. True, Brown was an officer of that corporation, but he did not take the bonds with the consent either of the bank or the Electric Company. Neither did the bonds bear "every evidence of title and transferability upon them," but they bore the recitals that they were secured by a mortgage and subject to all the provisions of said mortgage. The purchaser was thus put upon his inquiry. If he had made some investigation and had been informed by the Electric Company that Brown was clothed with full power to act for that corporation he might then invoke the rule that the more negligent of two innocent persons must suffer for the wrongful act of a third. (Civ. Code, sec. 3543; *Helmer* v. *Parsons*, 18 Cal. App. 452 [123 Pac. 356].)

This distinction is well settled in California. One of the leading cases on the subject is *Barstow* v. *Savage Mining Co.*, 64 Cal. 389, [49 Am. Rep. 705, 1 Pac. 349], in which it is held that a thief may not impart title to non-negotiable instruments like certificates of stock. It was there declared that the court was of the opinion "that the principle that the thief of the stolen property (it not being money or negotiable securities), can pass no title, should be maintained, unless the facts presented by a case should bring it within the law as stated in *McNeil* v. *Tenth National Bank*, 46 N. Y. 325, [7 Am. Rep. 341] : 'When the owner of property confers upon another an apparent title to or power of disposition over it, he is estopped from asserting his title as against an innocent third party who has dealt with the apparent owner in reference thereto, without knowledge of the claims of the true owner.' " (See, also, *Swim* v. *Wilson*, 90 Cal. 127, [25 Am. St. Rep. 110, 13 L. R. A. 605, 27 Pac. 33] ; *Coolidge* v. *Austin*, 22 Cal. App. 337, [134 Pac. 357].) Upon the facts in this case and under the authorities cited above we cannot see that respondents may avail themselves of the doctrine of estoppel.

No other alleged errors require particular attention except the contention that the *intent* of the payer was to make the bonds negotiable. There was some evidence regarding such

intent, but it was not sufficient to nullify the terms of the instruments themselves. The fact that an officer of the company believed the bonds to be negotiable does not alter their *terms*, which were ample notice to all persons who might purchase any of the securities, that they were subject to all of the provisions of the mortgage.

The judgment is reversed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.