[Civ. No. 6233. Second Appellate District, Division One.—March 18; 1930.]

EUNICE E. ROCKEFELLER, Respondent, v. O. BERNARD SMITH, Appellant.

John Schlegel, Homer N. Boardman and Hunsaker, Britt & Cosgrove for Appellant.

Irvin C. Taplin, Ivan Miller and Harry M. Hunt for Respondent.

CRAIG (ELLIOT), J., *pro tem.* — This is an appeal by defendant from a judgment of the Superior Court of Los Angeles County against him in the sum of $14,000 and costs.

On or about June 2, 1923, plaintiff, as lessor, and defendant, as lessee, entered into a written oil and gas lease of certain real property for a term of twenty years (unless said period be terminated earlier under the provisions thereof). The lessee agreed ''to pay the Lessor a monthly rental of $800.00 per month from June 25, 1923, payable on the 25th day of each and every calendar month, the first monthly payment to be made on June 25, 1923, and said rental to continue until the said lessee shall have actually commenced drilling operations on the first well provided for herein, at which time the said monthly rental shall cease, the said rental shall also cease in the event the lease be terminated as herein provided. . . . '' The lease then provided in substance that if lessee did not commence drilling operations within twelve months thereafter, the lessor could declare the lease terminated on thirty days' notice;

also, that "lessee may at any time before the discovery of oil on the demised premises, quitclaim the said property, or any part thereof, to lessor, . . . , and thereupon all rights and obligations of the parties hereto, one to the other, shall thereupon cease and determine as to the premises quitclaimed."

Defendant paid nine monthly installments of rent, i. e., to and including the installment which became due on February 25, 1924. No drilling operations were ever commenced.

Plaintiff commenced this action on July 30, 1925, praying for $12,000. On September 10, 1925, defendant quitclaimed the premises to plaintiff. On November 29, 1925, plaintiff filed an amended and supplemental complaint praying for $14,400 for unpaid rental from March 25, 1924 (inclusive), to and including the installment of August 25, 1925. The judgment was granted as prayed for by plaintiff, except that the installment of August 25, 1925, was prorated to September 10, 1925.

Defendant's principal defense was in substance that on or about April 11, 1924, defendant and plaintiff entered into a written agreement wherein defendant agreed to convey to plaintiff certain real property at a valuation of $6,600 "in exchange for an extension agreement extending the time for drilling the first well . . . for an additional period of twelve months from June 2, 1924. No further payments of rental provided for in said lease to be made to the lessor other than those payments made at this date. Good and valid extension agreement to be entered into between the parties of said lease." Plaintiff denied ever signing such agreement.

Appellant in his opening brief presents three points: (1) the trial court committed prejudicial error in refusing to allow appellant to prove that respondent signed the alleged agreement of April 11, 1924; (2) the trial court committed prejudicial error in refusing to allow appellant to prove, by secondary evidence, the alleged agreement of April 11, 1924, and (3) even though respondent did not sign the purported agreement of April 11, 1924, she is estopped by her actions to deny that she did.

Points 1 and 2 may be considered together. For the purpose of the present discussion we will take the evidence

which appellant attempted to offer, together with the evidence received and will disregard the findings of the court adverse to appellant, thereby placing the whole matter in the most favorable light to appellant.

The uncontradicted facts show that on or about April 11, 1924, plaintiff and defendant had a conversation in reference to the lease. That at about that time Fred D. Turner, business manager of defendant, prepared, in triplicate, the said alleged agreement of April 11, 1924, hereinafter referred to as the extension agreement. One copy unsigned by anyone was retained by said Turner in the office files of defendant. Beyond question one copy was signed by appellant and given to respondent, but this copy was produced in court and was not signed by respondent. The third copy was not produced. Let us, therefore, assume that respondent did sign it and that its contents were identical with the other copies as defendant claims that he attempted to show at the trial.

"The execution of an instrument is the subscribing and delivering it, with or without affixing a seal." (Code Civ. Proc., sec. 1933.) The term "execution" as applied to instruments in writing is considered as importing both a signing and a delivery. (*Ivey* v. *Kern County Land Co.*, 115 Cal. 196 [46 Pac. 926].)

"A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent." (Civ. Code, sec. 1626.) "Delivery of the instrument is the final act essential to its consummation as an obligation." (*Loud* v. *Collins*, 12 Cal. App. 786, 789 [108 Pac. 880, 881]; *Gas Appliance Sales Co.* v. *W. B. Bastian Mfg. Co.*, 87 Cal. App. 301, 305 [262 Pac. 452].)

"A transfer in writing is called a grant, or conveyance, or bill of sale. The term 'grant' in this and the next two articles includes all these instruments, unless it is specially applied to real property." (Civ. Code, sec. 1053.) The term "grant" as used in the definition of an escrow given by the Civil Code is comprehensive enough to include instruments other than deeds. (10 Cal. Jur. 577.) "The provisions of the chapter on transfers in general, concerning the delivery of grants, absolute and conditional, apply to all written contracts." (Civ. Code, sec. 1627.)

"A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor." (Civ. Code, sec. 1054.)

"A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect. While in the possession of the third person, and subject to condition, it is called an escrow." (Civ. Code, sec. 1057.)

"Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or,

"2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presented." (Civ. Code, sec. 1059.)

Throughout the whole case there is no contention on the part of appellant that there was ever a delivery of the extension agreement to appellant or that it was ever placed beyond the control of respondent (except possibly while in escrow).

Defendant O. Bernard Smith testified in part as follows: "A. Mrs. Rockefeller came in and she brought this document with her. She had taken it away when I made it and she said, 'I will accept your proposition.' I told her that the lots in question here were encumbered and it would have to be put in escrow so I would have time to clear these lots; . . .

"A. I said I would put it in the Citizens Trust & Savings Bank, and she said, 'That is all right.' . . . " The witness Fred D. Turner, produced on behalf of defendant, testified in part that he was business manager of Mr. Smith and took care of all details of his transactions, that he prepared the extension document in triplicate; "that one was filed (in Mr. Smith's office), one was placed in escrow at the Citizens Trust & Savings Bank, and one was handed to Mrs. Rockefeller"; that Mr. Smith told Mrs. Rockefeller "that the lots could not be delivered at that time, otherwise he would turn over the deed to the lots and take the extension at the same time"; that Mrs. Rockefeller said "that

would be satisfactory to put the extension agreement in escrow up against the deed of Mr. Smith''; that he personally accompanied Mrs. Rockefeller to the bank; and ''Q. How did you happen to go to that bank? A. It was explained to Mrs. Rockefeller that this property that was coming to her was held in trust there and it would be the simplest place to handle a proposition of this kind. Q. Why was it necessary or thought necessary for you to accompany her to the bank? A. She had the extension agreement, that was her property. Q. Why was it necessary for you to go there with her? A. I went there to the bank to show her who to go to. The trust property was handled by one party. It would simplify the matter if he had all the papers, and he was to turn over the deed to her and to turn the extension agreement over to him (Smith). I took her there to show her where she should go.''

Apparently no escrow instruction was ever given by defendant. Plaintiff's escrow instructions, under date of April 18, 1924, are as follows:

''I herewith hand you an extension agreement which you are authorized to deliver to O. Bernard Smith, when you hold for me deed covering lots 31, 32 and 33, block 5, tract 6220, and certificate of title covering said property, showing title vested in Eunice E. Rockefeller, a married woman, free and clear of all encumbrances, except second half of 1923–24 taxes and subsequent.''

''(Signed)   Eunice E. Rockefeller.''

The escrow was opened about April 18, 1924. About May 25, 1925, the papers theretofore deposited by plaintiff were withdrawn by her. The deeds were never deposited by appellant. If the time is not limited by the terms of the escrow, appellant was bound to perform the conditions of the escrow within a reasonable length of time. (Civ. Code, sec. 1657.) We think that in this matter respondent allowed appellant a reasonable time between the opening of the escrow and the withdrawal from escrow for compliance by him with the escrow requirements.

Where the escrow is abandoned, delivery of the instrument in escrow becomes ineffectual for any purpose. (*Whitney* v. *Sherman,* 178 Cal. 435 [173 Pac. 931].)

■ No delivery having been effected or wrongfully withheld, the extension agreement is ineffectual. It is therefore our conclusion that errors, if any there be, of the trial court in excluding evidence of the signing of the extension agreement by respondent and of the actual contents of such agreement, did not "result in a miscarriage of justice" within the meaning of that phrase under section 4½ of article VI of the Constitution.

Appellant states that the case of *Bauer* v. *State*, 144 Cal. 740 [78 Pac. 280], is decisive of the question presented by point 1. We have studied that case and find that it is not in point for the reason that the testimony therein offered and rejected, in addition to testimony of signing, included testimony that as so signed the documents had been delivered to the witness as agent for the assignor of the plaintiff in that case.

■ As to appellant's third point, to wit: estoppel, the answer thereto is against appellant's contention.

In order for an estoppel to exist it is essential that the party claiming the estoppel shall have been ignorant of the true state of facts. (*Stoner* v. *Security Trust Co.*, 47 Cal. App. 216 [190 Pac. 500]; *Barstow* v. *Savage Min. Co.*, 64 Cal. 388 [49 Am. Rep. 705, 1 Pac. 349].) There is no claim or suggestion of a claim on the part of appellant that he was ignorant of any of the true facts in the matter or that respondent misled him as regards the facts in any particular. He does claim that he relied upon the extension agreement. This agreement, however, was in escrow to his full knowledge. If he relied thereon it was in ignorance of the law and not of the facts. ■ He further claims that he was misled to his prejudice by the failure of respondent to demand the monthly rentals during the pendency of the escrow. We see no merit to this contention. Respondent's failure to demand rentals during the pendency of the escrow, to us is but evidence of her good faith and willingness to abide by the agreement then in escrow.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.